THE STATE OF CONNECTICUT vs. THE MAD RIVER COMPANY.

\* Third Judicial District, New Haven, June Term, 1917.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and TUTTLE, Js.

A company which has no title to the waters of a stream but merely controls its flow in its natural channels by means of reservoirs and dams, so as to avoid waste in times of freshet and a shortage in times of drouth, for the benefit of its stockholders who are lower riparian owners, is not taxable under the provisions of § 11 of Chapter 292 of the Public Acts of 1915, since its business is not the "selling" of water, which is one of the conditions essential to its taxation under this Act.

A "sale" implies an ownership in the thing sold and a transfer of that ownership or title to another.

Argued June 6th—decided July 6th, 1917.

APPLICATION to determine the amount of tax due the State from the respondent, and for an order for its payment, brought to and tried by the Superior Court in Hartford County, *Shumway, J.;* facts found and order passed requiring the payment of a tax of $19.50, from which the respondent appealed. *Error and judgment reversed.*

Mad River is a small tributary of the Naugatuck

---

\* Transferred from first judicial district.

River. In 1866 six riparian owners along the former stream entered into an agreement by the terms of which two reservoirs were to be built on streams which flowed into it, and an agent was appointed by them to buy the land and hold the same in trust, collecting from time to time from the parties to the agreement the expenditures entailed in the execution of the enterprise in certain specified portions. In 1872 this agreement was extended to include a third reservoir also located on a stream tributary to Mad River. Pursuant to these agreements the necessary land was purchased and the reservoirs built. The title to them was vested in a trustee.

In 1873 the defendant was chartered by the General Assembly. Its purpose, as stated in the charter, was "to maintain and improve the water power by means of reservoirs, cultivation of timber, and other suitable means, on the stream known as 'Mad River,' . . . and upon the branches and sources of said stream, and to purchase and hold certain improvements already made thereon." The corporation took over, in payment for its stock, all the property acquired under the two agreements recited, and the parties to those agreements became its stockholders. Its sole property was, and still is, the three reservoirs, together with their dams and the land connected therewith. It neither owns nor utilizes any canals, pipes or flumes. It has never diverted any of the water of the streams, upon which its reservoirs are located, from its natural course, nor has it the means or instrumentalities for doing so.

The dams and reservoirs are operated so as to hold back and store the water in times of plenty for release at such other times and in such amounts as its stockholders may desire. The water of the streams, after leaving the gates of the reservoirs, is at the service of every lower riparian proprietor. No objection has ever

been made by any such proprietor, not a stockholder in the defendant, to the retention of the water impounded and economized in the reservoirs. The highest site owned by any of the stockholders is four or five miles below the nearest reservoir.

For a long time it has been customary for the Scovill Manufacturing Company, one of the defendant's stockholders acting informally as its manager, to advance all the expenses of maintenance and taxation, and obtain reimbursement from the other stockholders in proportions agreed upon at the annual meetings. These proportions have varied from time to time. No two stockholders own the same amount of stock, and contributions made by the several stockholders toward the payment of the expenses of the corporation have borne no fixed relation to the amount of stock owned. Each stockholder is represented on its board of directors. The revenues of the corporation are confined to the contributions made to meet the expenses of maintenance and taxation as above stated.

*Arthur F. Ells*, for the appellant (respondent).

*George E. Hinman*, Attorney-General, for the appellee (applicant).

PRENTICE, C. J.   The Attorney-General brings this application under § 15 of Chapter 292 of the Public Acts of 1915, for an order for the payment by the defendant to the State of an amount claimed to be due under and by virtue of the provisions of Part II of that Act, being one providing for the taxation of certain corporations, partnerships, and so forth.

To bring the defendant within the operation of these provisions, three conditions must be met, to wit: (1) Its principal business must have been that of operating a system of water-works; (2) that operation must have

been for the purpose of selling and distributing water for domestic or power purposes; and (3) it must have had gross earnings from such operation in this State. It may be assumed, without decision, that the first and last named of these conditions were satisfied in the defendant's case. The second surely was not. That condition embraces both the sale and distribution of water. If it can reasonably be said that allowing the water of a stream to flow in its accustomed channels and be used and enjoyed freely by those who as riparian owners are entitled to use and enjoy it, is distribution within the meaning of the statute, the element of sale of the water thus distributed clearly is wanting. A sale implies an ownership in the thing sold and a transfer of that ownership to another. Public Acts of 1907, Chap. 212, § 1. It involves the passing of title. The defendant never has had title to the water which it has detained in its reservoirs, and it has never undertaken to give to anyone title to it or to any part of it. It has never attempted either to appropriate any water, or to divert any from its natural channels, or to restrict the beneficial enjoyment of the waters of the streams by lower proprietors entitled to such enjoyment. The only thing that it has sought or accomplished is a control of the flow of the water in such manner that through avoidance of waste at times, and of shortage at other times, the interest of riparian proprietors should be more beneficially served than would otherwise be the case. The purpose of the defendant is not sale but conservation. It exists for the rendition of service, and not for dealing in a salable commodity.

There is error, the judgment is set aside and the cause remanded for the rendition of judgment denying the application.

In this opinion the other judges concurred.