FRANK O'REILLY *vs.* CHARLES J. KELLY, Admr.

PROVIDENCE—JUNE 6, 1900.

PRESENT: Stiness, C. J., Tillinghast, and Rogers, JJ.

(1)  *Executors and Administrators.  Necessary Funeral Expenses.  Flowers.*

Where it appears that a deceased left no widow or children, and it became the duty of his housekeeper to make arrangements for the funeral, the estate is liable for the value of flowers furnished for the funeral upon the order of said housekeeper.

What expense may be incurred in such circumstances depends largely upon the custom of people of like rank and condition in society and the condition of the estate left by deceased.  While flowers are not, strictly speaking, a necessity, the custom has become almost universal, and where the charge is not extravagant it will be allowed.

*Tucker* v. *Whaley* 11 R. I. 543, distinguished.

ASSUMPSIT.  The facts are fully stated in the opinion. Heard on exceptions of plaintiff to ruling of District Court. Exceptions sustained.

TILLINGHAST, J.  This is assumpsit for flowers furnished for the funeral of James Monaghan, the defendant's intestate, upon the order of Charlotte Campbell, who was a sister-in-law of the intestate, and who had lived with him as his housekeeper for eighteen years previous to his death.  The case shows that the deceased left no widow or children, and that he left real estate valued at about $4,000 and life insurance of the value of $2,000.  It does not appear that he left any debts.  The value of the flowers furnished for the funeral was $15.  At the trial of the case in the District Court of the

Tenth Judicial District, the plaintiff was nonsuited on the ground that as matter of law the estate could not be held to pay for the flowers which were furnished, as they were not necessary. The plaintiff excepted to the ruling, and has brought the case here on a bill of exceptions to have said ruling reviewed. We think the ruling was erroneous. As (1) the deceased left no widow or children, and, so far as appears, no relatives who were disposed to take upon themselves the duty of making the necessary arrangements for the funeral, it became the duty of the sister-in-law, as housekeeper for the deceased and the only person left in charge of the body, to make such arrangements and see to it that the deceased was decently interred. What expense may properly be incurred in such circumstances depends largely upon the custom of people of like rank and condition in society, and the condition of the estate left by the deceased. 2 Woerner, §§ 357–8; 7 Am. & Eng. Ency. Law, 301, note 3. The demands of common propriety and decency should always be observed in connection with the burial of the dead, and the law pledges the credit of the estate for the payment of such expenses as are reasonably incurred for this purpose after the death and before the appointment of an administrator. *Phillips* v. *Phillips*, 87 Me. 324; *Fogg* v. *Holbrook*, 88 Me. 169; 3 Wm. Ex. *1679. The custom of having flowers at funerals is now well-nigh universal in this country; and when not abused by extravagance or unseemly ostentation, it is certainly to be commended as giving appropriate expression to our feelings of respect and love for the departed. It is true that, strictly speaking, flowers are not a necessity on such occasions; but, like many other things of which the same might be said, they are certainly appropriate and in harmony with the better feelings and sentiments of our common humanity. And we think it is clear that in the case at bar the housekeeper of the intestate, in the circumstances above mentioned, was warranted in obtaining, upon the credit of the estate, the flowers in question. Mr. Woerner, in his valuable work on the American Law of Administration, vol. 2, 759, says: "It is

the duty of the executor or administrator to bury the deceased in a manner suitable to the estate he leaves behind him; and if this duty, in the absence or neglect of the executor, is performed by another—not officiously, but under the necessity of the case—the law implies a promise to re-imburse him for the reasonable expenses incurred and paid." So careful is the law to provide for necessary funeral expenses that liabilities incurred therefor invariably take the first rank as debts against the estate; and in this State they are made a preferred claim even in cases of insolvency. Gen. Laws R. I. cap. 215, § 16, and also cap. 274, § 27. The estate, real and personal, of every deceased person is also expressly made chargeable with such expenses by Gen. Laws R. I. cap. 218, § 1. See *Buxton* v. *Barrett, Admr.*, 14 R. I. 40.

It is common knowledge that an administrator is almost never appointed until after the burial of the intestate. Somebody other than he, therefore, must necessarily make the arrangements for the funeral, and, in connection therewith, incur, either personally or as informally representing the estate, the necessary indebtedness therefor. And such acts do not make the person performing them an executor *de son tort.* 3 Younge & Jervis, 37, note A. If an undertaker is employed, somebody must employ him; and if it is understood that the person employing him is thereby to be rendered personally liable for the services to be rendered, it might sometimes happen that the funeral would be unduly delayed, and the divine injunction to "let the dead bury their dead" be literally heeded. In *Samuel* v. *Thomas*, 51 Wis. 552, the question to be determined was what expenses incurred intermediate the death of an intestate and the granting of letters of administration were legally chargeable to the estate, and the answer of the court was as follows: "We think that only such necessary expenditures as from the nature of the circumstances cannot properly be postponed until an administrator shall be appointed are so chargeable. This rule will, of course, entitle an heir, a legatee, widow, or guardian, or even a stranger who has paid reason-

able burial expenses necessarily incurred before administration could be granted, to be re-imbursed from the estate. But, as we understand the law, the rule goes no further. Every expenditure which can decently and reasonably be postponed until an administrator is appointed should be so postponed; and one who, before such appointment, voluntarily incurs an expense for which there is no immediate necessity, does so in his own wrong, and cannot compel the administrator, when appointed, to re-imburse him."

In *Tugwell* v. *Heyman et al., Exrs.*, 3 Campb. 298, the defendants were sued as executors for the funeral expenses of the testator, who left considerable property. The reasonableness of the plaintiff's bill was not denied, but it appeared that the defendants had given no orders whatever respecting the funeral. The question therefore arose whether, under these circumstance, they were liable upon an implied promise to the plaintiff. Lord Ellenborough said : "I think the defendants are liable in this action. It is allowed that the funeral was conducted in a manner suitable to the testator's degree and circumstances, and that the plaintiff's charge is fair and reasonable. The defendants do not deny that they have assets. Then will not the law imply a promise on their part to satisfy this demand ? It was their duty to see that the deceased was decently buried; and the law allows them to defray the reasonable expense of doing so before all other debts and charges. It is not pretended that they ordered anyone else to furnish the funeral, and the dead body could not remain on the surface of the earth. It became necessary that some one should see it consigned to the grave; and I think the executors, having sufficient assets, are liable for the expense thus incurred."

In *Rogers* v. *Price, Ex.*, 3 Younge & Jer. 27, it was held that an executor who has assets sufficient for that purpose is liable, upon an implied promise, to pay for a funeral suitable to the degree of his testator, furnished by the direction of a third person. In delivering his opinion in the case Garrow, B., used the following forcible illustration in support of his

position.: "Suppose a person to be killed. by accident at a distance from his home ; what, in such a case, ought to be done ? The common principles of decency and humanity, the common impulses of our nature, would direct every one, as a preliminary step, to provide a decent funeral at the expense of the estate, and to do that which is immediately necessary upon the subject in order to avoid what, if not provided against, may become an inconvenience to the public. · Is it necessary in that or in any other case to wait until it can be ascertained whether the deceased has left a will or appointed an executor ; or, even if the executor be known, can it, where the distance is great, be necessary to have communication with that executor before any step is taken in the performance of those last offices which require immediate attention ? " He then added : "It is admitted here that the funeral was suitable to the degree of the deceased, and upon this record it must be taken that the defendant is executor with assets sufficient to defray this demand ; I therefore think that, if the case had gone to the jury, they would have found for the plaintiff, and that therefore this rule should be made absolute."

In *Luscomb* v. *Ballard*, 5 Gray, 403, which was cited by Durfee, C. J., in support of the position taken by this court in *Tucker* v. *Whaley*, which will be referred to later on, the court held that for the funeral expenses of the deceased the executor was chargeable in his representative character, and that judgment therefor should be rendered *de bonis testatoris.*

*Sweeney* v. *Muldoon, Admr.*, 139 Mass. 304, was a case where the plaintiff, at the request of the widow and the remaining relatives of the deceased, purchased à burial lot for the deceased at a cost of $125, and also incurred other expenses, as follows : digging grave, $3 ; use of chapel for service and for funeral ceremony, $12 ; curtains, $10; *flowers*, $6 ; underwear and clothing, $3.40 ; monument, carting and setting, and fixing lot, $113. These items were all allowed as proper funeral expenses excepting the last named, Field, J.,

saying that "The law raises a promise on the part of the administrator, so far as he has assets, to pay the reasonable funeral expenses of burying the deceased, although they are incurred before his appointment."

In *Hapgood* v. *Houghton*, 10 Pick. 154, Putnam, J., said : "The estate in the hands of the executor is bound by law for the payment of the expenses of the decent interment of the deceased. It is just as liable for the coffin and other necessary charges of the funeral as for necessary supplies in the lifetime. We are all clearly of the opinion that the law raises a promise on the part of the executor or administrator to pay the funeral expenses so far as he has assets."

There are certain expressions in the opinion of this court in the case of *Tucker* v. *Whaley*, 11 R. I. 543, which, taken by themselves, may seem to be at variance with the position we have taken in the case at bar, but we think that case is clearly distinguishable from this on the facts. There the defendant who bought the hay to feed the cattle of the intestate, though not the administrator at the time, subsequently became such, and hence the court held that he could be regarded as having been the administrator by relation when he made the purchase. The action was not brought against the defendant as administrator, however, but was brought against him in his individual capacity ; and it would seem that the court took the view that it should have been brought against him as administrator, as is done in the case now before us, for the court said : "The hay procured of the plaintiff was necessary for the sustenance of the cattle belonging to the estate, and ought to be paid for out of the estate as an expense incident to the administration." And further : "The defendant should have paid the plaintiff's claim and charged it to the estate, and, the charge being proper, would undoubtedly have been allowed by the Court of Probate."

Exceptions sustained, and case remitted to the District Court of the Tenth Judicial District for a new trial.

*Hugh J. Carroll,* for plaintiff.
*Joseph Osfield, Jr.,* for defendant.