AIME GIGUERE
*vs.*
ELAINE WEBBER

Kennebec.   Opinion, June 11, 1953.

*Jerome Daviau,* for plaintiff.

*Goodspeed & Goodspeed,* for defendant.

SITTING:   MERRILL, C. J., THAXTER, FELLOWS, NULTY, WILLIAMSON, TIRRELL, JJ.

WILLIAMSON, J. This is an action of assumpsit upon an account annexed brought by the plaintiff, a funeral director in St. Georges in the Province of Quebec, against the defendant a resident of Augusta in the State of Maine. The entire action on which the suit is based took place in St. Georges. The plaintiff seeks to recover his charges for funeral services for the defendant's uncle on an implied contract by the defendant to pay therefor. The case is before us on exceptions to the direction of a verdict for defendant at the close of the evidence.

Under Maine law such a contract is governed by the law of Quebec. *Carey* v. *Mackey*, 82 Me. 516, 20 A. 84, 9 L. R. A. 113, 17 Am. St. Rep. 500 (1890) ; *Emerson Co.* v. *Proctor*, 97 Me. 360, 54 A. 849 (1903) ; *Flynn* v. *Currie*, 130 Me. 461, 157 A. 310 (1931) ; 2 *Beale, Conflict of Laws* 1140 (1935). For purposes of the case it is stipulated that the applicable law of Quebec and of Maine are the same. It follows that the issue is to be determined in accord with the common law of Maine. We are not concerned with the statute law of either Maine or Quebec.

The issue is whether, taking the evidence and the inferences reasonably to be drawn therefrom in the light most favorable to the plaintiff, a jury could properly have found for the plaintiff. The rule is stated by Chief Justice Murchie in *Glazier* v. *Tetrault*, 148 Me. 127, 90 A. (2nd) 809 and in the cases there cited. If, under the rule, a jury could —not that it must—have found for the plaintiff, then the exceptions should be sustained; otherwise overruled. What the plaintiff asks is a chance to "go to the jury."

An examination of the record shows that a jury could have found the following situation set forth briefly and not in detail.

The decedent died in July 1952 at his home in St. Georges, leaving neither widow nor children. On the day following

the defendant with her husband and her mother and father, the decedent's brother, reached St. Georges. The defendant met Miss Lorraine Vaillancourt, her uncle's housekeeper, and together they examined caskets on display at the plaintiff's establishment to which the body had been taken shortly after death.

After the housekeeper had left, the plaintiff in the presence of Mr. Pozer, Chief of Police, asked the defendant which of two caskets she wished. The defendant selected the less expensive in accordance with her uncle's wish as she then in substance stated.

The plaintiff did not speak English, except apparently to inquire about the choice of a casket, and the defendant did not speak French. Mr. Pozer acted as interpreter for them.

The defendant insists that the selection of the casket was made in the presence of Miss Vaillancourt and denies the conversation with the plaintiff in the presence of Mr. Pozer. For the purpose of testing the exceptions, however, we accept the plaintiff's version.

On the morning after the funeral the plaintiff, accompanied by Mr. Pozer who again acted as interpreter, presented the bill to the defendant. The defendant denied liability and said in substance that "Lorraine Vaillancourt got everything. She ought to pay." Further she then told the plaintiff that decedent in April 1952 gave her $1000 in bonds and informed her that he had transferred his property to Miss Vaillancourt under an agreement whereby the latter would care for him and pay expenses of his last sickness and funeral. Before the plaintiff's bill was shown to her the defendant had obtained a copy of her uncle's will, executed March 1, 1952, and in the possession of a notary and this she showed the plaintiff. In the will, after providing for payment of debts and expressing a wish to be buried in a "not too costly coffin," the decedent gave and be-

queathed all of his property to Miss Vaillancourt "who is in my service since some time, and whom I make my general and universal legatee," to quote from the English translation of the will which was written in French.

The liability of the defendant rests upon whether or not she had agreed to pay the plaintiff for the funeral expenses prior to or at the time she selected the casket. The plaintiff says that at that moment there was an implied contract on her part to pay the expenses; and this the defendant denies.

The case presents the not unusual picture of a close relative making necessary decisions for a funeral without expressing any agreement to pay the expense. Without question the funeral arrangements with the plaintiff were approved by the defendant. The record shows further that the defendant secured and paid for the services of an Anglican minister and provided flowers for the funeral.

We may fairly infer from the record that the defendant had a close relationship with her uncle. Surely it was not unnatural that the niece should take a more active part in arranging for the funeral than did her mother or her father, aged 76 years, or that in view of the differences of religion the niece and not the housekeeper should attend, for example, to the securing of the services of an Anglican minister.

There is no evidence: (1) that the defendant expressly promised to pay the plaintiff; or (2) that the plaintiff ever requested that the defendant agree to pay therefor until the bill was presented; or (3) that she indicated in any manner responsibility on her part for the expense.

At common law there is a presumption that funeral expenses are incurred upon the credit of the estate of the decedent. There are three typical situations: (1) the undertaker against the estate; (2) a third party against the estate for reimbursement, and (3) the undertaker against

a third party making the arrangements. Examples of the first and second situations are found in our reports with clear statements of the underlying reasons.

The court said in *Phillips* v. *Phillips,* 87 Me. 324, 325, 32 A. 963:

> "The necessity of a decent burial arises immediately after the decease, and the law, both ancient and modern, pledges the credit of the estate for the payment of such reasonable sums as may be necessary for that purpose, even though such expenses may have been incurred after the death and before the appointment of an administrator."
> (by way of defense — reimbursement by third party from estate) ;

and in *Fogg* v. *Holbrook,* 88 Me. 169, 172, 33 A. 792, 793:

> "When such expenses are incurred, necessarily after the death of a person, there is no one legally authorized to represent the estate. The services must be rendered and necessary articles furnished immediately; it is better that these things should be done upon the credit of the estate, than that there should be hesitation and inquiry as to who is liable to pay."
>
> (undertaker v. executor in his representative capacity)

The presumption is equally applicable in the case of the undertaker against the third party. *Waterman & Sons* v. *Hook,* 246 Mass. 522, 141 N. E. 596, 30 A. L. R. 440, with annotation; *Breen* v. *Burns,* 280 Mass. 222, 182 N. E. 294; *Sugarman* v. *Cohen,* 53 R. I. 242, 165 A. 899; 34 C. J. S. 135, "Executors and Administrators," Sec. 384; 21 *Am. Jur.* 568, "Executors and Administrators," Sec. 330. See also *Wilson, Maine Probate Law* (1896), page 285; *Jackson, The Law of Cadavers* (2d. Ed. 1950), pages 67 and 468.

How would the plaintiff overcome the presumption that the expense was incurred on the credit of the estate? In

the final analysis his claim is based upon the facts that the defendant selected the casket, approved the funeral arrangements and represented the decedent's family. There is nothing in the defendant's actions after the arrangements were completed, and in particular at the meeting with the plaintiff following the funeral, which could by any possibility have reasonably indicated an agreement to pay on her part. The present situation has been well expressed in the words of the Rhode Island Court in *Sugarman* v. *Cohen, supra,* as follows:

"The presumption of law is that funeral expenses are a charge against the estate of the deceased. Someone from the necessities of the case must engage a funeral director, and this is usually some member of the family or a relative of the deceased, since an administrator cannot be appointed in time to act in this behalf. O'Reilly v. Kelly, 22 R.I. 151, 46 A. 681, 50 L.R.A. 483, 84 Am. St. Rep. 833; Tucker v. Whaley, 11 R.I. 543; Rice v. New York Central & H.R.R. Co., 195 Mass. 507, 81 N.E. 285. The presumption is, even in the case of the widow of the deceased, that she, in engaging a funeral director, is doing so in behalf of the estate. Waterman & Sons v. Hook, 246 Mass. 522, 141 N.E. 596, 30 A.L.R. 440.

"In Hayden v. Maher, 67 Mo. App. 434, the court said: 'Primarily the estate of a decedent, and not his widow, is responsible for his funeral expenses. The mere fact that the widow requests the burial cannot change the rule. * * * If the undertaker desires to hold the widow responsible, he must protect himself by her valid promise to pay. No promise to pay can be implied on her part from a bare request.'

"The plaintiff does not rely on an express promise on the part of the defendant, and he has not testified to any facts or circumstances from which a promise could be implied other than the request by defendant that he conduct the funeral. This is not sufficient to overcome the presumption that the

services were rendered on the credit of the deceased's estate.

"The defendant's exception to the denial of her motion for a directed verdict is sustained."

It is our view that no implied promise to pay for the funeral, at least in the first instance as we shall later discuss, arose from the evidence taken in the light most favorable to the plaintiff. The presumption that the parties dealt with each other on the credit of the estate remains undisturbed. Whether there is a secondary liability in the event the plaintiff does not receive payment from the estate or otherwise presents a different question.

The plaintiff seeks to show that the defendant has proved that there are no assets in the estate. There is a suggestion in the plaintiff's argument that the defendant is thus liable for the reason there is no estate available to pay the bill. In other words, the plaintiff indicates a secondary liability on the part of the defendant.

The evidence of the defendant, however, on the score of the decedent's estate does not go to the extent urged by the plaintiff. It satisfactorily appears that the decedent some months before his death had property in St. Georges and that he left all of his property, whatever it may have been, to his housekeeper, as we have pointed out. There may be property of value in the estate. There is the possibility that there may be a liability on the housekeeper's part to pay the funeral expenses to the extent of the property, if any, received by her from the decedent.

We think the undertaker should proceed against the estate of the decedent, and, if necessary, against persons who may have acquired an interest in his property during his lifetime under conditions suggesting liability for the funeral expenses. As between the undertaker and defendant niece, however, we are of the view that there was no implied con-

tract for the payment of the funeral expenses. At most the evidence would indicate an implied agreement to pay if the undertaker did not otherwise collect his charges. However, it is not on this theory that the case was tried or the ruling before us made. We do not indicate what our opinion might be if it developed that such was the agreement. The verdict on the record was properly directed for the defendant.

*Exceptions  overruled.*