Miners Savings Bank of Pittston, Appellant, *v.*
Royal Indemnity Company.

Argued September 27, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*John T. Mulhall,* with him *M. J. Mulhall,* for appellant.

*Thomas Byron Miller* and *Fred B. Davis,* for appellee, were not heard.

OPINION BY MR. JUSTICE SCHAFFER, November 27, 1939:

The action is assumpsit to recover on an indemnity bond losses sustained by plaintiff bank as a result of defalcations of one of its employees. The bond indemnified plaintiff against loss due to "a dishonest or criminal act" on the part of its officers or employees. The losses claimed were discovered in April of 1931 and covered a period from October 8, 1930, to March 31, 1931.

The claim is resisted by defendant on the ground that on May 21, 1930, Sharkey, the defaulter, had misappropriated $950 of the bank's funds, and that plaintiff's officers had knowledge of this misappropriation and did not report it to defendant at the time. This defense was based upon the following provision in the bond: "This bond shall terminate as to any officer or employee of the Insured (a) as soon as the Insured shall learn of any default hereunder committed by such officer or employee."

Sharkey admitted that on May 21, 1930, he had taken $950 in cash from his cash drawer for his individual use, and placed in the drawer in its stead a debit slip for $950 and his note for $1000. He stated: "the note at that time was perfectly regular. I had the authority to put the transaction through myself." He subsequently obtained his father's endorsement on the note.

Defendant called a bank examiner who testified that on his examination of the bank on May 31, 1930, he discovered in Sharkey's cash settlement the $950 item and Sharkey's note for $1000. He stated that he called the matter to the attention of the president of the bank, who was dead at the time of trial, and was told by him that

he had full knowledge of the item, that it was perfectly proper and that the note was held for endorsement by Sharkey's father. Defendant also called a witness who testified that when he was investigating the $950 matter, he called it to the attention of the officers of the bank, one of whom told him that it was a defalcation, that it was irregular, had never been approved by the loan committee, and that no one in the bank knew about it at the time the bank examiners made their periodical investigation. Another witness called by defendant testified that the president of the bank said he had decided to forgive Sharkey provided he got his father's endorsement on the note. "On a continuing guarantee for the honesty of a servant, if the master discovers that the servant had been guilty of dishonesty in the course of the service, and instead of dismissing the servant, he chooses to continue him in his employ without the knowledge and consent of the surety, express or implied, he cannot afterwards have recourse to the surety to make good any loss which may arise from the dishonesty of the servant during the subsequent service": *Phillips v. Foxall,* 7 Q. B. 666.

The trial judge submitted to the jury the question whether this transaction was a criminal or dishonest act on the part of Sharkey with the direction to return a verdict for defendant if they so found. The jury's verdict was for defendant; from the judgment entered thereon plaintiff appeals.

Appellant's chief complaint is that the trial judge improperly submitted to the jury the question whether Sharkey's act in taking the $950, and placing his note in its stead, was a criminal or dishonest act. It is contended that it was a mere irregularity and not such an act as would terminate liability under the bond. Plaintiff overlooks defendant's evidence that the officers of plaintiff admitted that it was a defalcation, that Sharkey took the $950 without authority, and without the knowledge of any of the bank's officers. In the light of

this evidence the jury was justified in finding that his conduct was dishonest, if not actually criminal within the language of the bond. The coverage of the bond extends beyond acts which are strictly criminal in nature. The extent of the indemnity provided in bonds containing similar provisions has recently been considered by us. It is sufficient to say that they protect the insured against any acts of its employees involving moral turpitude or want of integrity or any act done with the intent to defraud the insured for the personal profit of the employee: *Universal Credit Co. v. United States Guarantee Co.*, 321 Pa. 209, 183 A. 806; *Erie Trust Co. Bank v. Employers' Liability Assur. Corp.*, 322 Pa. 132, 185 A. 224. There was evidence from which the jury could find that Sharkey's conduct involved a direct attempt to defraud the bank of $950, and that he endeavored to cover his embezzlement by giving his worthless note. The fact that the note was subsequently endorsed by his father does not change the primary dishonesty of his act. Such conduct would involve a default within the terms of the bond. The case was properly submitted to the jury.

That the officials of the bank after notice of Sharkey's action saw fit to condone it and continue him in their employ cannot deprive defendant of its valid defense under the bond. If they cared to assume the risk of his future actions they could not involve defendant in their conduct or prejudice its rights. The misappropriation of the $950 would seem to be the beginning of thefts by Sharkey from the bank, which in their aggregate amounted to more than $20,000. The surety company was entitled to know from plaintiff what it knew about any dishonesty on the part of its employee as soon as such faithless conduct was ascertained.

Appellant assigns as error certain portions of the charge. The assignments are without merit. It is contended that the trial judge charged it was the duty of plaintiff to give notice to defendant of Sharkey's act

irrespective of its character and that such a charge amounted to binding instructions for defendant. A reading of the entire charge fails to sustain this position. Nor can appellant's allegation that the charge as a whole was misleading be sustained. It should be noted in this connection that a general exception only was taken to the charge and no special exception made to the portion now claimed to be misleading.

Judgment affirmed.