Northeast Lincoln-Mercury, Inc. *v.* The Century Indemnity Company, Appellant.

Argued March 27, 1956. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*Bayard M. Graf,* with him *Thomas F. Mount, Joseph W. Henderson* and *Rawle & Henderson,* for appellant.

*Burton Caine,* with him *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY GUNTHER, J., July 17, 1956:

On May 4, 1950, the Century Indemnity Company of Hartford, appellant, insured the Northeast Lincoln-Mercury, Inc., appellee, for a period of three years against loss from employe dishonesty. Two and one-half years later an employe and principal in this case was engaged by the appellee company and worked until April 24, 1953 when he was dismissed for stealing property belonging to the appellee.

Proof of claim was filed but appellant refused to pay on the ground that the policy was cancelled by reason of the appellee's knowledge that the principal committed dishonest acts while engaged in prior employment. It is asserted that the knowledge imparted to appellee consisted of the fact that its service manager was informed by an official of a competing company that the principal was discharged by his company on November 19, 1952 for stealing tools and an engine and that the principal also stole tires, a cooling fan and other equipment from Kenneth Duncan Motors, prior employers.

Appellant relies on the following provisions for cancellation of the policy:

Section 11 (a)

"Section 11. Insuring agreement I of this policy shall be deemed cancelled as to any employee: (a) Immediately upon discovery by the assured . . . of any fraudulent or dishonest act on the part of such employee."

Section 5

"Prior Fraud, Dishonesty or Cancellation. Section 5. No employee, to the best of the knowledge of the assured or of any partner or officer thereof not in col-

lusion with such employee, has committed any fraudulent or dishonest act in the service of the assured or otherwise."

It is maintained by appellant that all information or suspicion as to whether or not the employe was dishonest should have been communicated to it. The question now arises whether appellee's omission to notify the appellant, upon hearing that the principal had committed dishonest acts elsewhere during prior employployment, cancelled the policy.

The answer to this question was very ably stated by Judge MILLEN as follows: "The policy was prepared by the insurance company. If the company wishes to provide for reports to the Company of any derogatory information received by the assured, they could have spelled it out in the policy . . . The defendant is seeking to read into the policy a provision which is not included, namely that it was the duty of the assured to notify the company upon receiving any information that an employee had committed dishonest acts before entering the employ of the assured."

The following principle is set forth in 50 Corpus Juris, par. 277, page 177: "The time does not begin to run against the obligee until he knows, or has had reasonable opportunity to know, of the principal's default, and knowledge within the meaning of this rule is actual knowledge."

The case of *Thomas Holme Building and Loan Association v. New Amsterdam Casualty Co.*, 124 Pa. Superior Ct. 187, 188 A. 374, holds that even the strongest suspicion does not amount to knowledge or discovery of dishonesty by the insured. In *American Employers' Insurance Co. v. Cable*, 108 F. 2d 225, the Court definitely expressed that nothing short of actual discovery of dishonesty or a positive breach of an imperative condition will defeat claims for loss caused by that dis-

honesty, unless it is otherwise provided in the contract. *American Surety Co. v. Pauly,* 170 U.S. 133, 18 S. Ct. 552, also supports the same view, namely:

"If the company intended that the bank should inform it of mere rumors or suspicions affecting the integrity of O'Brien, such intention ought to have been clearly expressed in the bond."

The other question raised is whether the cancellation clause of the policy refers only to dishonesty of the principal while in the employ of the insured or otherwise.

Is the word "otherwise" to be interpreted as all embracing or is it to be considered only as it relates to the employment in the service of the assured?

Section 1 of the policy reads:

"Employee or employees means, respectively one or more of the natural persons. . . . while in the regular service of the Assured in the ordinary course of the Assured's business during the Policy Period. . . ."

In *Miners Savings Bank of Pittston v. Royal Indemnity Company,* 336 Pa. 428, 9 A. 2d 543, the Court had this to say: " 'On a continuing guarantee for the honesty of a servant, if the master discovers that the servant had been guilty of dishonesty in the course of the service . . . he cannot afterwards have recourse to the surety to make good any loss which may arise from the dishonesty of the servant during the subsequent service.' " The *Miners Savings* case, supra, is cited by the appellant as one of the authorities for its contention. In the instant case the master did not discover that the servant had been guilty of dishonesty in the course of his service; and, we believe, that fact creates an important distinction between the two cases.

Appellee cites *Reliable Furniture Co. v. Union Safe Deposit and Trust Co.,* 138 Me. 87, 21 A. 2d 834, which is not analogous but does give reasonableness to the

interpretation given by the lower court. In that case an employe embezzled over $1,000 before the bond was executed. The Court held that the policy was not cancelled by reason of failure to report a loss occurring before the policy was issued and based its decision on the ground that the policy contained no express provision that it should be void unless notice of prior misconduct was given.

Such interpretation is not unreasonable in view of the rule of construction that insurance policies must be construed most strongly in favor of the insured and against the compensated surety. *South Phila. State Bank v. National Surety Co.*, 288 Pa. 300, 135 A. 748; *Beley v. Pennsylvania Mutual Life Insurance Co.*, 373 Pa. 231, 95 A. 2d 202; *Snader v. London & Lancashire Indemnity Company of America*, 360 Pa. 548, 62 A. 2d 835.

The purpose of fidelity bonds is indemnity of the assured and liability cannot be avoided except by clear and unambiguous clauses of limitations. It seems unreasonable to require the insured to transmit to the insurance company all rumors and derogatory information concerning an employe, as in this case, unless the fidelity bond so provides.

After a careful examination of the facts stated and due consideration given to the interpretation placed upon the cancellation provisions of the policy, we find nothing that would justify a reversal of the judgment.

Judgment affirmed.

ERVIN, J., dissents.