## THE EMERSON COMPANY *vs.* THOMAS D. PROCTOR.

### York.   Opinion March 16, 1903.

*Sales.   Record.   Lex Loci.   Contracts.   Place.   Corporations.   Residence.   Trover.   R. S., c. 91, § 1; c. 111, § 5; Stat. 1895, c. 32.*

Revised Statutes, c. 111, § 5, as amended by Public Laws 1895, c. 32, requires the agreements therein named, where a corporation is the purchaser, to be recorded. Such corporation, within the meaning of the amended section, "resides" in the town in which it has its established place of business.

The general rule governing the construction of a contract is that its validity is to be determined by the law of the place where it is made.

Where nothing more remains to be done by either party to make a contract valid and binding between them, it is deemed to have been executed at the place where the last act necessary to complete it was done. Wheresoever the other steps have been taken, it is the last or final act of assent which is regarded as giving the contract a place or locality.

The agreement, under which the plaintiff claimed was finally signed by the purchaser in Biddeford, Maine, and sent by mail to the plaintiff in Maryland. It became obligatory from the moment that the minds of the parties met, even though a knowledge of this concurrence had not been brought home to the plaintiff. The act of acceptance which completed the contract took place when it was finally signed and deposited in the mail, properly addressed to the plaintiff; and the contract was then complete, even though it had never been received by the plaintiff.

*Held;* that the contract was made in Maine; that its validity is to be determined by the laws of Maine, and, not being recorded in accordance with the laws of this State, it is invalid as against the defendant, who was not a party thereto.

On report. Judgment for defendant.

Trover to recover the value of a dry kiln.

The case is stated in the opinion.

*Edwin Stone, Enoch Foster,* for plaintiff.

*H. Fairfield and L. R. Moore,* for defendant.

SITTING: WISWELL, C. J., STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J　This is an action of trover. The first count is for a six track patent automatic compressing dry kiln 31 feet wide and 84 feet long. The dry kiln is a building erected by the Biddeford & Natick Mfg. Co., a corporation located at Biddeford in this State. The plaintiff corporation furnished, and claims to still own the most of the apparatus and iron work used in its construction, but this would not give title to the building itself. In order to recover under the first count the plaintiff must show title to the dry kiln, and this it has not done.

This brings us to the second count, which is for the apparatus and iron work sold and delivered by the plaintiff to the Biddeford & Natick Mfg. Co., and used by it in the construction of this dry kiln. Prior to October 21, 1899, there had been some negotiations between said company and the plaintiff, but the parties had been unable to agree upon the terms of a sale or contract. On that date the plaintiff made and signed a written proposal at its office in Baltimore, Maryland, and sent it to the Biddeford & Natick Mfg. Co. in Biddeford, by Mr. Bruce, one of the directors of the last named corporation. By this written proposal the plaintiff corporation offered to furnish specifications and schedule of material required for a dry kiln 31 by 84 feet, and also the apparatus and iron work for the price of $1850. The erection of the building was to be under the superintendence of a mechanic to be furnished by the plaintiff and paid by the Biddeford & Natick Mfg. Co. On the day of the shipment the plaintiff was to notify the Biddeford Co. by telegraph, and the latter was to send at once to the former its note on four months, to the order of the plaintiff, for $1850. which note the proposal recited that the First National Bank of Biddeford had agreed to discount. Upon the receipt of the proceeds the plaintiff corporation agreed to immediately assign and forward bill of lading to the Biddeford Co. the title in the shipment until the receipt of said proceeds to remain in the plaintiff. It was further agreed that the title to the property was to remain in the plaintiff until all payments were fully

paid and discharged. The proposal contained a guaranty as to the working of the kiln after construction. The Biddeford Co. was to give to the superintendent before leaving a written acceptance or rejection of the kiln. If rejected it was to have the right to reload and return the material at the cost of the plaintiff, and a failure to do so was to be regarded as an acceptance.

Such in substance was the written proposal made and signed by the plaintiff in Baltimore, and sent to the Biddeford & Natick Mfg. Co. at Biddeford. After its receipt the latter telegraphed the former, "If we sign contract, do you agree to renew notes for four months making eight in all. Wire reply." The plaintiff answered, "Yes, if bank will discount renewal." Thereupon the Biddeford & Natick Mfg. Co., at Biddeford, signed the following acceptance at the bottom of the proposal. "Biddeford, Me., Oct. 26, 1899. The Emerson Company, Baltimore, Md. We hereby accept the above proposition." It then returned it to the plaintiff, and also sent the plaintiff its note for $1850, payable at the First National Bank, Biddeford, Me. This note has never been paid, and the plaintiff claims title to the property under the terms of the written agreement.

The agreement has not been recorded, and the defendant, who claims title by purchase from the assignee of the Biddeford and Natick Mfg. Co., invokes the provisions of R. S., c. 111, § 5, as amended by the laws of 1895, c. 32, which declares that, "No agreement that personal property bargained and delivered to another, shall remain the property of the seller till paid for, is valid unless the same is in writing and signed by the person to be bound thereby. And when so made and signed . . . . it shall not be valid except as between the parties thereto, unless it is recorded in the office of the clerk of the town in which the purchaser resides at the time of the purchase." This section requires all such agreements in which a corporation is the purchaser to be in writing and signed. We think it was also intended that they should be recorded; that a corporation within the meaning of that section "resides" in that town in which it has its established place of business. Prior to 1895, this section required such agreements to be "recorded like mortgages of personal property," and mortgages of personal property made by a corpora-

tion must be recorded in the town where it has its established place of business. R. S., c. 91, § 1. The change of phraseology made in 1895 was not intended to work a change of the law in this respect. It was intended to broaden rather than limit the rule that such agreements, in order to be valid, must be in writing, signed and recorded. No reason can be assigned why it should not apply to such agreements when made by a· corporation as purchaser, as well as when made by any other person. The act of 1895 required them to be in writing, and signed, and the legislature when it used the word "resides" did not intend to change the existing law in regard to recording, but did intend that the term should embrace corporations which have an established place of business in this State as well as those persons who, more strictly speaking, reside here.

It is a general rule governing the construction of a contract, that its validity is to be determined by the law of the place where it is made. The case shows that the law of Maryland does not require such agreements to be recorded. In all other respects it must be presumed that the law of that state is the same as our own, and that even in Maryland no such agreement was valid against third parties unless in writing and signed by the purchaser. Where then, was this contract made, in Baltimore or in Biddeford? The plaintiff signed and sent its proposition to the Biddeford & Natick Mfg. Co. in Biddeford. When it did so, it in effect sent its mind into Maine. At Biddeford the Biddeford & Natick Mfg. Co. assented to the proposition, signed and returned the contract. It was in Maine that the minds of the parties met. It was there that, what was before but the plaintiff's proposition, became a contract by the assent of the other party to the proposition. It was there that the agreement that the property in suit should remain the property of the plaintiff until paid for was signed by the person to be bound thereby. Nothing more remained to be done by either party to make the contract valid and binding between them. The paper was returned and received by the plaintiff, and we think it a fair presumption, in view of the testimony in the case, that it was returned by mail from Biddeford. The burden is upon the plaintiff to show title, to show a contract made in Maryland, and there is no sugges-

tion in the case that the written contract was returned in any other way than by being deposited in the mail at Biddeford. By that act it passed beyond the control of the Biddeford & Natick Mfg. Co., and became a binding contract.

In determining the place where a contract is made, it is a rule of very general application that it is deemed to have been executed at the place where the last act necessary to complete it was done. *Northampton Mutual Live Stock Ins. Co.* v. *Tuttle,* 40 N. J. L. 476. The rule is thus stated in a note to *McGarry* v. *Nicklin,* 110 Ala. 559, 55 Am. St. Rep. 44: "It is undoubtedly true that a contract cannot exist to which the assent of two or more parties is essential, until that assent has been given by all, and, therefore, where there are negotiations or various steps leading to the contract, the last of which is necessary before it can become a contract, it is not finally executed until that step has been taken; and, wheresoever the other steps have been taken, the last only is regarded as giving the contract a place or locality, and it is therefore deemed executed at the place only where the final or last act of consent is given." *Gipps Brewing Co.* v. *De France,* 91 Iowa, 108, 51 Am. St. Rep. 329, 28 L. R. A. 386; *Milliken* v. *Pratt,* 125 Mass 374, 28 Am. Rep. 241. In the latter case a guaranty was executed in Massachusetts and sent by mail to the plaintiffs in Maine, and there accepted by them. It was held that the contract was made in Maine, because a guaranty is inoperative until accepted, and the last act of assent was given in Maine. *Bell* v. *Packard,* 69 Maine, 105, 111, 31 Am. Rep. 251, is not in conflict but in accord with this rule. There the plaintiff was to give up the old note upon the delivery of a new one signed by a good surety. The surety's contract was not binding until its acceptance by the plaintiff. The new note was accepted in Maine, and it was held that the contract was made in Maine, where the last act of consent was given.

The contract became obligatory from the moment that the minds of the parties met, even though a knowledge of this concurrence had not been brought home to the plaintiff. The act of acceptance which completed the contract took place when the assent of the Biddeford & Natick Mfg. Co. was deposited in the mail at Biddeford properly

addressed to the plaintiff. *Bailey* v. *Hope Ins. Co.*, 56 Maine, 480. It did not depend upon its delivery to the plaintiff, and the contract was complete even though it had never been received by the plaintiff. VII Am. & Eng. Ency. of Law, 2 ed., 134 & 135; *Bishop* v. *Eaton*, 161 Mass. 496, 42 Am. St. Rep. 437. Not only therefore was the contract made in Maine, and the parties presumed to have contracted with reference to the laws of Maine, but the circumstances are such that it is difficult to avoid the inference that the parties in fact regarded it as a Maine contract. The bill of lading was in the name of the plaintiff as consignee and it was afterwards to be indorsed to the Biddeford & Natick Mfg. Co., and the apparatus and iron work to be first delivered to it in Maine. They were to enter into the construction of a building in Maine, to be erected under the superintendence of the plaintiff. The apparatus and iron work were to be there accepted or rejected, and if rejected to be there returned to the plaintiff. The note was to be paid in Biddeford. Every substantial act attending the performance or enforcement of the contract, except the shipping of the apparatus and iron work consigned to the plaintiff itself, was to be done in this State.

It was a Maine contract; and not being recorded in accordance with the laws of this State, the plaintiff fails, as against the defendant, to show title under it.

*Judgment for defendant.*