JAMES BELL *vs.* JAMES P. JORDAN et al.

Cumberland.    Opinion October 29, 1906.

*Contracts.    Construction.    Intention of parties to govern, when.    Breach. Damages.    Liquidated Damages.*

In the construction of contracts, it is a fundamental rule or consideration paramount to all others that the intention of the parties, as gathered from the language of all parts of the agreement considered in relation to each other, and interpreted with reference to the situation of the parties and the manifest object which they had in view, must always be allowed to prevail unless some established principle of law or sound public policy would thereby be violated.

The defendants made a contract to. sell the plaintiff 5000 cases of " High Maine Standard Corn " from the crop of 1903, but in order to safeguard the transaction against extraordinary contingencies, they qualified the proposition to sell 5000 cases by stipulating that "in case of short crop owing to circumstances beyond the control of the packer, 70% delivery to be guaranteed buyer, and 10% of purchase price to be paid buyer by seller for any quantity delivered short of the 70% guaranteed by this contract." *Held :* that it was not the intention of the parties that the defendants should be relieved of the obligation of their guaranty to deliver 70 per cent by any other circumstances than that of a short crop, and in that event the intention disclosed by the contract is that the defendants were to deliver such part of the 70 per cent as the condition of the crop would enable them to provide.

Although the crop of 1903 was short, it was not a total failure, but was such as would have enabled the defendants to deliver 40 per cent of the 5000 cases called for by the contract, or 2000 cases. *Held :* that it was the duty of the defendants to deliver that amount and to pay 10 per cent of the purchase price of the balance. The necessary shortage was only 30 per cent and not 70 per cent of the 5000 cases sold.

For failure to deliver the 2000 cases which they might have delivered, *Held :* that the defendants are liable to pay damages, the difference between the contract price of the corn and the market value of the same at the time and place stipulated for delivery, and for failure to deliver the balance of 30 per cent which they were unable to deliver, they are liable to pay 10 per cent of the purchase price as liquidated damages with interest on both of said sums from the date of the breach to the time of judgment.

On agreed statement of facts. Remanded for assessment of damages according to opinion.

Assumpsit to recover damages for the breach of a contract whereby the defendants agreed to sell and deliver to the plaintiff 5000 cases of sweet corn during the year 1903. The defendants failed to sell and deliver any sweet corn to the plaintiff under this contract, thereupon the plaintiff brought this action for the recovery of damages. The action was commenced in the Superior Court, Cumberland County. An agreed statement of facts was then filed and the case sent to the Law Court with the agreement that the case should be submitted for hearing and argument on the agreed statement of facts, damages to be assessed by the Judge of the Superior Court after the liabilities of the defendants had been finally determined by the Law Court.

All the material facts appear in the opinion.

*George F. Gould,* for plaintiff.

*Bird & Bradley,* for defendants.

SITTING : WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. This is an action to recover damages for the breach of a contract for the sale of sweet corn, and the case comes to this court on an agreed statement of facts.

The plaintiff was a wholesale grocer doing business at Philadelphia, and the defendants were packers of sweet corn, doing business at

Portland, Maine, with factories at North Turner and New Gloucester. In the month of January 1903, the plaintiff entered into the following written contract with the defendants, viz:

"Sold to Mr. James Bell, Philadelphia, Pa.,

For account of The United Packers, Portland, Maine.

"Five thousand (5000) cases, 2 dozen each, 'High Maine Standard' corn, of crop 1903.

"Price, 80 cents per dozen, F. O. B. Portland, Me., with rate of freight from Portland, Me., to Philadelphia, Pa. allowed buyer.

"Cans to be covered by tissues furnished by seller, and buyer's plain labels to be pasted on the outside of the tissue, and allowance to be made buyer for labels of $1.00 per thousand.

"One thousand (1000) cases of the goods covered by this contract to be shipped and billed as soon as packed and ready to send forward, and the remaining four thousand (4000) cases to be shipped later as instructed by buyer, with the understanding that the entire lot is to be sent forward before freezing weather. All goods to be billed when shipped.

"In case of short crop, owing to circumstances beyond the control of the packer, 70% delivery to be guaranteed buyer, and 10% of purchase price to be paid buyer by seller for any quantity delivered short of the 70% guaranteed by this contract.

"Terms Cash in 10 days, less 1½%."

In the summer and fall of the year of 1903 there was a short crop of corn, owing to circumstances beyond the control of the defendants, and consequently the defendants were able to pack only forty (40) per cent of the total amount of corn which they had contracted to sell and deliver to purchasers.

Although the plaintiff was ready at all times to receive and pay for the corn specified in the contract, in accordance with its terms, the defendants failed to deliver any corn whatever or to perform any of the terms of their contract.

The controversy between the parties involves a construction of the last clause of the contract relating to the obligation of the defendants "in case of a short crop." The plaintiff claims that although there was a short crop, the defendants by the stipulations in their contract,

considered together, should have delivered to him forty per cent of the total 5000 cases which they engaged to deliver, and paid him ten per cent of the purchase price of the balance of the "seventy per cent delivery" guaranteed by the clause of the contract in question. In other words the plaintiff claims that it was the duty of the defendants, by the terms of the contract to deliver to him the forty per cent of the total amount which they had packed and were able to deliver, and to pay him ten per cent of the purchase price of the remaining thirty per cent guaranteed, which they were not able to deliver.

On the other hand the defendants contend that under the terms of the contract in the event of a short crop, they had the option either to deliver to the plaintiff the seventy per cent of the entire 5000 cases which they engaged to deliver, or to deliver none at all and pay ten per cent of the whole seventy per cent as liquidated damages. Thus the only question before this court is whether the defendants are liable to pay damages according to the ordinary rule for failing to deliver the forty per cent of the corn which they sold and might have delivered, or whether they are only required to pay ten per cent of the purchase price, as liquidated damages on that amount as well as on the remaining thirty per cent which they could not deliver.

In the construction of contracts there is one fundamental rule or consideration which is paramount to all others, and that is, that the intention of the parties, as gathered from the language of all parts of the agreement considered in relation to each other and interpreted with reference to the situation of the parties, and the manifest object which they had in view, must always be allowed to prevail unless some established principle of law or sound public policy would thereby be violated.

When the contract for the sale of the sweet corn in question in this case is examined in the light of the foregoing considerations, it is the opinion of the court that it must be construed in accordance with the plaintiff's contention. The defendants desiring a market for the product of their factories in 1903, made a contract to sell the plaintiff 5000 cases of "High Maine Standard Corn" from the crop

of that year. The plaintiff desiring to supply his stock in trade as a wholesale grocer, accepted the defendants' proposition. The one wished to sell corn and the other wished to buy it. But in order to safeguard the transaction against extraordinary contingencies, the defendants qualify the proposition to sell 5000 cases by stipulating that in the event of a short crop occasioned by "circumstances beyond the control of the packer," only 70 per cent of the 5000 cases should be guaranteed, and if they were unable to deliver the 70 per cent by reason of such short crop they would pay 10 per cent of the purchase price of the quantity not delivered as damages for such failure to deliver. It was obviously not the intention of the parties that the defendants should be relieved of the obligation of their guaranty to deliver 70 per cent by any other circumstance than that of a short crop. In that event the intention disclosed by the contract is that the defendants were to deliver such part of the 70 per cent as the condition of the crop would enable them to provide. Although the crop of 1903 was short, it was not a total failure, but was such as would have enabled the defendants to deliver 40 per cent of the 5000 cases called for by the contract, or 2000 cases. It was the duty of the defendants to deliver that amount and to pay 10 per cent of the purchase price of the balance. The necessary shortage was only 30 per cent and not 70 per cent of the 5000 cases sold. For failure to deliver the 2000 cases which they might have delivered, the defendants are liable to pay as damages, the difference between the contract price of the corn and the market value of the same at the time and place stipulated for delivery, and for failure to deliver the balance of 30 per cent which they were unable to deliver, they are liable to pay 10 per cent of the purchase price as liquidated damages, with interest on both of said sums from the date of the breach to the time of judgment.

According to the stipulation of the parties, the case is remanded to the Superior Court for the assessment of damages in accordance with this opinion.

*So ordered.*