RELIABLE FURNITURE COMPANY

*vs.*

UNION SAFE DEPOSIT & TRUST COMPANY OF DELAWARE.

Cumberland.    Opinion, September 17, 1941.

*Bernstein & Bernstein*, for plaintiff.

*William B. Mahoney*, for defendant.

SITTING: STURGIS, C.J., HUDSON, MANSER, WORSTER, MURCHIE, JJ.

HUDSON, J.   This is an action on a fidelity bond, heard by a justice of the Superior Court without the intervention of a jury, with right of exceptions reserved on matters of law, who ruled in favor of the plaintiff, to which ruling the defendant now presents its exceptions.

On January 30, 1939, the plaintiff had among others in its employ one Brennan. On that date the defendant executed and delivered to the plaintiff the bond sued on, by which the defendant promised "to pay to the RELIABLE FURNITURE COMPANY, Portland, Maine, as Employer, such pecuniary loss as the Employer shall sustain of money . . . by any act or acts of FRAUD, DISHONESTY, THEFT, EMBEZZLEMENT . . . directly or through connivance with others by any of the employees listed in the schedule forming part of this bond, while in any position or at any location in the employ of the employer; the liability of the Insurer for any employee not to exceed the amount specified in said schedule for such employee, to begin with the date set opposite the name of the employee and to terminate as hereinafter provided." Herein recovery is sought on account

of a pecuniary loss sustained through acts of larceny and embezzlement by Brennan while acting as manager for the plaintiff. He was one of those listed in the schedule forming part of the bond. It is admitted "that at the time of the execution and delivery of the bond the plaintiff had no knowledge of any acts of misconduct on the part of Brennan and acted in good faith."

The facts are not in dispute. On September 8, 1939, approximately seven months after delivery of the bond, the plaintiff discovered that Brennan, before its execution, had embezzled $1,050 from the company. Brennan admitted this and made a settlement therefor by giving his note to the company for $1,050 payable in weekly installments. He paid until December 13, 1939, when the plaintiff discovered that he had also embezzled other sums from it between January 30, 1939, and December 13, 1939, amounting to $443.11, of which $73.95 was embezzled prior to September 8, 1939. The defendant denies liability on account of the losses sustained subsequently to September 8, 1939, because of the discovery of the previous loss on that date. That that discovery was not communicated to the defendant is admitted. Instead thereof the plaintiff continued Brennan in its employment. Now it seeks reimbursement for the losses sustained by embezzlement by him since September 8, 1939, during the period covered by the bond.

The defense is twofold; first, that by reason of the wording of the bond, liability terminated on September 8, 1939, and second, that regardless of its language it is not liable because of established general principles of the law of suretyship.

The bond states:

"5. This insurance as to any or all of the employees named in said schedule shall only terminate by . . ."
"b. As to any employee, by his retirement from the employ of the Employer *or upon discovery of loss through that employee*." [Italics ours.]

The plaintiff contends that the $1,050 loss by embezzlement prior to the execution of the bond, discovered on September 8, 1939, is not contemplated by 5-b.

Thus a question of construction arises. To what does the word "loss" refer? Did the parties contract that the insurance should terminate upon discovery of a loss sustained prior to the execution of the bond or not? With reference thereto the language in 5-b is indefinite. The surety might well have intended that it should refer to losses that happened any time before the execution of the bond, and yet the obligee might as well have understood from the language employed that there was no duty imposed upon it to inform of such a discovery to avoid termination of the insurance. Language of definite meaning is lacking. As stated in *Southern Surety Co.* v. *Mac-Millan Co.*, 58 F. (2d), 541, 546, it is to be noticed "that it" (the bond) "contains 'no express provision in the bond declaring that it shall be void if the notice of prior misconduct is not given.' Considering the care with which insurance contracts are drawn, the absence of such a common provision is significant." Ambiguities in an insurance contract are resolved against the insurer. "No rule, in the interpretation of a policy, is more fully established, or more imperative and controlling, than that which declares that, in all cases, it must be liberally construed in favor of the insured, so as not to defeat without a plain necessity his claim to indemnity, which, in making the insurance, it was his object to secure. When the words are, without violence, susceptible of two interpretations, that which will sustain his claim and cover the loss must, in preference, be adopted." *Barnes* v. *Insurance Company*, 122 Me., 486, 491, 120 A., 675, 676. Also see *Johnson* v. *Insurance Company*, 131 Me., 288, 292, 101 A., 496; *Russell* v. *Fire Insurance Company*, 121 Me., 248, 116 A., 554.

Employing this rule of construction and construing this language in this bond more strongly against the surety, we hold that discovery of a loss sustained by an embezzlement by

the employee before the effective date of the bond did not terminate the insurance. The parties saw fit to make a special contract in which was set forth those things which "shall only terminate" the insurance. To terminate it one of those things must occur, and here, as we construe the language of 5-b, there was no such occurrence. The insurance for future losses occurring during the life of the bond still obtained.

True, under the general law of suretyship (where no different provision appears in the bond, and here it does appear) it is well settled that in a case of continuing suretyship in a fidelity bond, the continuance in employment of the employee after discovery of defalcation without making such discovery known to the surety is fraudulent and discharges it from liability. Many cases outside this jurisdiction so hold. We have found none in Maine where there has been such a continuance in employment following discovery of a loss prior to the execution of the bond. Many years ago a leading case, much cited elsewhere, *Franklin Bank* v. *Cooper, Ex'r.*, 36 Me., 179, was decided by this court, but in that case the discovery was before the bond was given. There the action was on the bond of a bank cashier and it was claimed in defense that the directors of the bank had knowledge which they did not convey to the surety and so acted fraudulently in taking the bond, that knowledge not disclosed being that, at the time the bond was given, there was an existing deficiency in the accounts of the cashier.

This court then stated on pages 196 and 197:

"It is not readily perceived how a person desirous of obtaining security can be considered to be guilty of a fraud in law by omitting to make known facts even of an important character, affecting the risk of the surety, when it does not appear, that he had an opportunity to do so. On the contrary when he does know such facts and has reason to believe, that they are not known to the proposed surety, if information be sought from him, or if he have a suit-

able opportunity, and the facts are of such a character, that they are not found in the usual course of that kind of business, and are such as to materially increase the risk, it is not perceived, that it is not a duty to make them known. . . .

"It is generally admitted, that an omission to communicate circumstances materially affecting the risk known to one party and unknown to the other, will destroy the validity of the contract, whenever the party having the knowledge is bound to communicate it. The difficulty consists in arriving at a correct conclusion under what circumstances one is so bound. He is so bound when his relations are such, that the other party is entitled to repose any particular confidence in him, and when inquiries are made of him respecting the suretyship. Is he not equally bound when he has a suitable opportunity to make them known?

". . . To receive a surety known to be acting upon the belief, that there are no unusual circumstances, by which his risk will be materially increased, well knowing that there are such circumstances and having a suitable opportunity to make them known and withholding them, must be regarded as a legal fraud, by which the surety will be relieved from his contract."

While Section 8 of the bond in recognition of the common law, as above stated, provides that knowledge by the employer at the time of the execution of the bond that theretofore the employee has committeed acts of "fraud, dishonesty, theft, embezzlement . . . while in the prior service of the employer" shall render the bond "void and of no effect from its original date," yet it does not provide that discovery of a loss following the bond's execution where the loss occurred prior thereto shall terminate the "insurance." Without such termination the bond remained in full force and effect as to later losses by larcenies and embezzlements, even though the

obligee discovered a prior loss by larceny and embezzlement and failed to report it to the surety.

We discover no error in the ruling of the justice below.

*Exceptions overruled.*

MURCHIE, J., CONCURRING IN RESULT. I concur in the opinion of the majority of the court that under the particular fidelity bond, discovery by the employer, after the beginning of the suretyship period, that an employee had embezzled funds prior to the commencement thereof, did not terminate the bond as to that particular employee. Such decision seems to come within the established rule that any ambiguity in the contract of a compensated surety shall be construed against the insurer. According to my view, however, the action of the plaintiff in diverting a part of the subsequent earnings of the employee to the liquidation of his prior default would have been, if properly pleaded, a *pro tanto* defense to any recovery for subsequent defalcations.

The case is absolutely without precedent in this, or any other, jurisdiction. The record discloses that the employee had stolen approximately $1,050 when the bond was written, and $73.95 in about seven months thereafter before discovery of his earlier dishonesty. The employer, upon such discovery, arranged to retain $20 per week from his salary, and an indeterminate amount in commissions, to apply upon his unbonded defalcations. In the ninety-six days following, and while $3.33 per day (disregarding commissions) was being diverted from his earnings, he stole an additional $363.16. His peculations in the seven-month period averaged about thirty-five cents per day, and in the ninety-six day period about $3.75 per day.

Recital in the majority opinion is that the employee "paid" whatever amount was recovered against the old default in the ninety-six day period. I do not so read the record. The facts as stated in the court below were that the plaintiff "took a note . . . and agreed to deduct . . . weekly . . . a certain amount." In the bill of exceptions the statement is that the "plaintiff . . .

took a note . . . and thereafterwards . . . did deduct the sum of $20 per week." To my mind there is a distinction between such facts and payment. The plaintiff was unwilling to trust the employee to make an agreed weekly payment out of his earnings, yet was willing to trust him, at the risk of his insurer, to handle money not his own. Had he been trusted to handle his own earnings and made voluntary payments on his old default, I would be in entire accord with the opinion, but I cannot subscribe to the view that a party insured can trust an employee at the risk of an insurer when unwilling to do so at his own.

The defendant having elected, however, to plead the action of the plaintiff as a termination of liability rather than in mitigation of damages, and having assented before the court below that if the plaintiff should be found entitled to recover for defaults subsequent to the discovery aforesaid, the amount of the recovery should be $443.11, I join in the mandate

*Exceptions overruled.*