**ROSS ISLAND SAND & GRAVEL CO.,** **an Oregon corporation, Plaintiff,**

v.

**GENERAL INSURANCE COMPANY OF** **AMERICA, a Washington corpora-** **tion, Defendant.**

**Civ. No. 68–40.**

United States District Court, D. Oregon.

June 19, 1970.

George L. Kirklin, McColloch, Dezendorf, Spears & Lubersky, Portland, Or., for plaintiff.

Fredric A. Yerke, Jr., King, Miller, Anderson, Nash & Yerke, Portland, Or., for defendant.

OPINION

SOLOMON, Chief Judge.

Ross Island Sand & Gravel Co. (Ross Island) filed this action to determine whether two claims asserted against it were covered by its insuring agreement with General Insurance Company of America (General). Ross Island also seeks to determine whether General breached its duty to defend Ross Island on the claims. The case was submitted on the agreed facts in the pretrial order.

Ross Island manufactures and supplies readymix concrete. General insures Ross Island under a blanket liability policy.

In August, 1965, Ross Island entered into a contract with Hoffman-Dillingham, the general contractor on the Holladay Park Plaza.[1] The contract required Ross Island to furnish concrete which conformed to specifications set forth in the contract. In December, 1965, Ross Island entered into a similar contract with Beck-Utah, the general contractor for the Calaroga Terrace.[2]

In July, 1966, Hoffman-Dillingham notified Ross Island that the concrete poured into two floors of the Holladay Park Plaza did not harden within the time specified in the contract. On the same day, Beck-Utah notified Ross Island that the concrete poured into the fourth floor of the Calaroga Terrace also failed to meet contract specifications.

A few months later both Hoffman-Dillingham and Beck-Utah submitted claims to Ross Island for damages resulting from the defective concrete. Both claims included expenses for construc-

---

1. Hoffman-Dillingham was a joint venture between Hoffman Construction Co. and Dillingham Construction Co.

2. Beck-Utah was a joint venture between Henry C. Beck Company and Utah Construction and Mining Co.

tion delays. Beck-Utah's claim also included expenses for removing and replacing the defective concrete. Ross Island tendered both claims to General, who rejected them for lack of coverage.

In 1967, Beck-Utah filed an action on its claim against Ross Island in this Court. In 1968, Hoffman-Dillingham filed an action on its claim against Ross Island in the State court. Ross Island tendered the defense of both actions to General, who refused to assume the defense in either case. Ross Island settled the Hoffman-Dillingham action and successfully defended the Beck-Utah action, which is now on appeal to the Ninth Circuit Court of Appeals.

### COVERAGE

The insuring agreement between Ross Island and General provides that General will pay "all sums for property damage which Ross Island becomes legally obligated to pay." The agreement also provides that it does not cover:

"(c) property damage:

\*    \*    \*    \*    \*    \*

(4) to any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the occurrence arises;

(d) to damages, because of property damage, due:

\*    \*    \*    \*    \*    \*

(2) to the loss of use of any such defective goods or products or completed work, or to damages resulting from the loss of use of such defective goods or products or completed work;

(3) to any loss or damage which is caused by improper or inadequate performance, design or specification, or nonsuitability for its intended purpose, of such goods or products or completed work unless there is actual physical damage to other tangible property, other than physical damage caused or necessi-

tated by the repair or replacement of such goods or products or completed work."

The parties agree that exception (c) (4) excludes coverage for the cost of the new concrete which Beck-Utah bought to replace the defective concrete. General contends that (c) (4) also excludes coverage for the labor expenses in removing and replacing the concrete. In addition, General contends that exceptions (d) (2) and (d) (3) exclude coverage for all the expenses claimed.

■ The cases which have construed provisions similar to (c) (4) uniformly hold that the provisions exclude coverage only for the cost of purchasing a new product. Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of New York, 281 F.2d 538 (3rd Cir. 1960); Bundy Tubing Co. v. Royal Indemnity Company, 298 F.2d 151 (6th Cir. 1962); Bowman Steel Corp. v. Lumbermens Mutual Cas. Co., 364 F.2d 246 (3rd Cir. 1966). The provisions do not exclude coverage for the cost of removing and replacing a defective product from a structure into which it has been incorporated.

■ There are no cases construing provisions similar to (d) (2) and (d) (3). However, the language of these provisions excludes coverage for all the damages here. Exception (d) (2) states that the policy does not cover "damage resulting from the loss of use" of a defective product manufactured by Ross Island. The construction delays alleged by both contractors resulted from their inability to use the concrete floors manufactured by Ross Island.

Exception (d) (3) states that the policy covers damages caused by a defective product only if the damages are to "other property" and are not "caused or necessitated by the repair or replacement of \* \* \* the product." The structural damages caused by the defective concrete resulted solely from the replacement of the Ross Island concrete.

I therefore find that the policy does not cover the claims asserted against Ross Island.

## DUTY TO DEFEND

The insuring agreement between Ross Island and General provides that General agrees "to defend any suit against the insured in which * * * [damages covered by the policy] are sought * * *." The parties agree that General's obligation under this provision is independent of its liability to pay the claims.

Ross Island contends that General had a duty to defend both the Hoffman-Dillingham and Beck-Utah actions because the complaints stated claims which were broad enough to include damages covered by the policy. General contends that it did not have a duty to defend either action because prior to the time the complaints were filed both Ross Island and General knew the exact nature of the damages claimed.

I agree with General. Several months before Hoffman-Dillingham and Beck-Utah filed their actions, they submitted detailed damage claims to Ross Island. Ross Island tendered the claims to General. When actions were filed against Ross Island on the claims, both complaints alleged merely that the plaintiff was injured because Ross Island furnished concrete which did not conform to agreed specifications. Ross Island relies on four cases. Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir. 1949); Aetna Casualty & Surety Co. v. Martin Bros. Container & Timber Products Corp., 256 F.Supp. 145 (D.Or. 1966); Ferguson v. Birmingham Fire Insurance Co., 460 P.2d 342 (Or. 1969); Burnett v. Western Pacific Insurance Co., 469 P.2d 602 (Or. 1970). Each of these cases holds that an insurer's duty to defend is determined by the complaint and that a duty arises whenever the complaint states a claim which might allow recovery for damages covered by the policy.

▮ If the allegations of a complaint are so general that it cannot be determined whether the claim is for damages covered by the policy, the insurer must defend until it appears that the claim is for damages not covered by the policy. Lee v. Aetna Casualty & Surety Co., *supra.*

▮ The purpose of this rule is to prevent the insured from losing his right to have an action against him defended merely because the claim was not stated precisely. The rule has no application here because at the time the complaints were filed both parties knew exactly what damages were sought. It would have been useless for General to temporarily undertake the defenses merely because the complaints did not allege the undisputed facts which placed the claims outside the coverage of the policy. Since both Ross Island and General knew the specific nature of the claims, and the claims were not covered by the policy, General had no duty to defend the actions.

I find that none of the damages asserted against Ross Island were covered by the policy. I also find that General had no duty to defend either of the actions filed against Ross Island.

This opinion will serve as findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.