BAYBUTT CONSTRUCTION CORP.

v.

COMMERCIAL UNION INSURANCE
CO.

Supreme Judicial Court of Maine.

Argued March 9, 1982.

Reargued Nov. 9, 1982.

Decided Jan. 4, 1983.

**916**

Vafiades, Brountas & Kominsky, Eugene C. Coughlin (orally), Bangor, for plaintiff.

Gross, Minsky, Mogul & Singal, P.A., George C. Schelling (orally), Bangor, for defendant.

Before McKUSICK, C.J., GODFREY, NICHOLS, ROBERTS, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

Commercial Union Insurance Co., the defendant, appeals from a summary judgment rendered against it in favor of Baybutt Construction Corp., the plaintiff in a declaratory judgment action in which, as the named insured of a comprehensive general liability insurance policy issued to it by the insurance company, it sought a determination that the defendant was obligated to provide it with coverage for and defense of the pending action for damages brought by the City of Waterville on account of the roof collapse of its Junior High School building.[1] We affirm the judgment of the Superior Court, Penobscot County, as modified, declaring that the defendant insurance company has to defend the plaintiff construction company in the reference action of the City of Waterville, and deny the appeal.

## 1. *Facts*

In January, 1979, the City of Waterville initiated an action against Baybutt Construction Corp., the company involved in building the Waterville Junior High School, and other parties such as the engineering firm hired to design and supervise its construction, the insurance company that acted as surety on the performance bond, and the outfit that had supplied the trusses for the roof. As against the present plaintiff, Baybutt Construction Corp., the City in its complaint alleged that Baybutt Construction had provided materials for, and performed construction work on, the Waterville Junior High School building, and that the roof had collapsed during harsh winter weather. It set out several theories under which it contended that Baybutt Construction was liable for the damages incurred: negligent construction, breach of an implied warranty· that the contracted services would be performed in a workmanlike manner, and breach of an implied warranty that the product would be fit for its intended purposes.

During the period of construction, the plaintiff was insured under a comprehensive general liability policy issued by the defendant. The plaintiff, a New Hampshire corporation doing business in Maine, purchased the reference policy in New Hampshire through a New Hampshire insurance agency; the defendant is a Massachusetts entity doing business in Maine; the policy purported to cover the insured's construction activities in Maine, New Hampshire, and Vermont.

After the City of Waterville commenced its action for negligence and breach of warranties, the insured plaintiff notified the defendant and demanded that it provide a defense against the City's claims. The defendant denied coverage and refused to defend the plaintiff in the underlying action.

---

1. Although the motion for summary judgment was filed by the defendant insurance company and no counter motion was entered by the plaintiff construction company, summary judgment was properly rendered in favor of the adverse party, since our rules of civil procedure do provide that "summary judgment, when appropriate, may be rendered against the moving party." Rule 56(c), M.R.Civ.P.; Maine Civil Practice, Field, McKusick and Wroth, 2d Ed., Commentary § 56.9.

The plaintiff then brought the instant action in the Superior Court pursuant to 14 M.R.S.A. §§ 5951–5963, seeking a judgment which declared that the provisions of its insurance contract with the defendant obligated the defendant both to cover and defend the plaintiff in the City's suit.

## 2. *Choice of law*

### A. *By-passing the issue*

In its opinion underlying the ensuing summary judgment to the effect that the defendant insurance company was obligated to cover and defend the plaintiff construction corporation in the pending action of the City of Waterville arising out of the roof collapse of its Junior High School building, the court below purported not to resolve the noticed preliminary choice-of-law issue existing in the case, for the stated reason that the intention of the parties in relation thereto was a question of fact which precluded summary judgment in respect to that particular issue. Notwithstanding the court's purposeful avoidance of the choice-of-law issue, if the ultimate decision granting summary judgment in favor of the plaintiff is correct under the circumstances, then the court's decision must stand.

■ Where the trial court's ultimate conclusion is correct in law, it must be sustained on appeal, although its conclusion may have been reached by an incorrect process of legal reasoning. *Laferriere v. Paradis,* 293 A.2d 526, 529 (Me.1972); *Allstate Insurance Company v. Lyons,* 400 A.2d 349, 352 (Me.1979).

### B. *Applicable law*

The issue in this case is whether Commercial Union Insurance Company's comprehensive general liability policy provided coverage to its insured Baybutt Construction Corp. and a duty to defend it for its failure to perform a construction contract in a workmanlike manner and for furnishing work and materials of such poor quality that the resulting product, to wit, the roof of the high school building, was not fit for its intended purpose. Such is the basic issue which, in the instant case, must be resolved by the interpretation to be given to the terms of the insurance contract between the parties. Where, however, the reference insurance policy was issued by a Massachusetts insurance corporation through a New Hampshire insurance agency to a New Hampshire corporation which purchased it for the purpose of insuring itself against liability risks which might result from its construction activities in the three states of Maine, New Hampshire and Vermont, and, where the specific insured risk involved in the underlying suit for damages was located in Maine, the interpretation to be given to the insurance contract, when construed by a Maine court, will depend necessarily on the particular state law applicable to the situation. If the law of New Hampshire is the applicable law, then the Superior Court's grant of summary judgment against the insurance company, insofar as the duty to defend is concerned, was proper, because the New Hampshire Court has construed an identical insurance contract as so providing in a similar situation. *See Commercial Union Assurance Companies v. Gollan,* 118 N.H. 744, 394 A.2d 839 (N.H.1978). Maine, however, has not addressed the issue, and, thus, it is imperative to decide the conflict-of-laws question in order to assess the correctness of the decision below.

This Court, in the case of *The Emerson Company v. Proctor,* 97 Me. 360, 54 A. 849 (1903), did state the general rule prevailing at that period of time which governed the construction of a contract involving multiple states to be, that its validity is to be determined by the law of the place where the contract is made. Id. at 363. It further supported its decision that the contract involved in that case was a Maine contract by reason of the fact that it contemplated the construction of a building in Maine to be erected under the superintendence of a Maine corporation, in other words, that performance was to be in Maine.

This doctrine (a) that issues of validity and construction of contracts are to be determined by the local law of the place of contracting and (b) that issues respecting performance of contracts are to be determined by the local law of the place of performance (original Restatement §§ 332 and 358), like the rule governing rights and liabilities in tort, which with certain exceptions required the application of the local law of the "place of wrong," has met with general disfavor when applied to cases wherein the factual scenario indicates that more than one state may be potentially interested in the litigation by reason of the relation of the several states to the transaction and the parties.

In *Beaulieu v. Beaulieu*, 265 A.2d 610 (Me.1970), in the tort area, we departed from the lex loci delicti rule and adopted a more flexible rule giving controlling effect in a choice-of-law situation to the law of the state which has the more significant contacts, the more substantial relationships to the parties and the occurrence and the more important governmental interests in the solution of the issue before the court. Id. at 617.

We believe the time has come to follow the present trend of the authorities and adopt in the contract area, as we did in the tort context, a more flexible rule in conflict-of-laws situations. As stated in the Restatement (Second) of the Law, Conflict of Laws 2d (1971) § 188, in the absence of an express effective choice of applicable state law by the parties, the rights and duties of the parties with respect to an issue in contract are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties. Specifically, in a casualty insurance contract, as is involved in the instant case, the validity of the contract and the rights and duties created thereby, are to be determined, in the absence of an express effective choice of law by the parties, by the local law of the state which the parties understood was to be the

principal location of the insured risk during the term of the policy, unless with respect to the particular issue involved, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied. Restatement, (Second) of the Law, Conflict of Laws 2d (1971), § 193.

Comparing the relative "contacts" and "interests" of Maine, New Hampshire and Massachusetts with the parties and the particular contract out of which this litigation arises respecting the rights of the insured and the responsibility of the insurer, we notice immediately that Maine's contacts with the parties and with this casualty contract are substantial and that her governmental interest in the activities of the parties and in the resolution of disputes arising out of that contract is of major significance and of greater concern than that of the other two sister states. The plaintiff in the underlying action, a beneficiary of this declaratory judgment proceeding, is a Maine municipality seeking redress for damages suffered in the course of the performance of a governmental function, that of furnishing higher education to its citizens. The activity protected by the casualty insurance contract, insofar as applied to the building of the Junior High School in Waterville, was understood by the immediate parties to the contract to be concentrated wholly in Maine. In no way in the instant case can the mere fact that the domicil of the insurance company was in Massachusetts, or that the construction company was a New Hampshire corporation and that the insurance contract was issued in New Hampshire be considered of greater significance, whether by reason of state contact or governmental interest, than the location, here in Maine, of the insured risk, which ordinarily will be given greater weight than any other single contact in determining the state of the applicable law, especially in a case where the casualty insurance contract covers a *localized* activity. *See* Restatement (Second) of the Law, Conflict of Laws, § 193, comment (b), at page 611.

The location of the insured risk must needs be of major concern to the parties to an insurance contract and, insofar as they have not mandated otherwise, it may be assumed that they entered into the insurance contract with the expectation and implied intent that the local law of the state where the risk is to be located would be applied to determine issues that may arise under the contract. In giving primary significance to the location of the insured risk in a contract for casualty insurance, when determining the applicable state law in a conflict-of-law situation, the rule merely reflects the implied intent of the parties to the contract, as well as furthering the interests of the state having the most significant relationship to the transaction.

 In so doing, we are merely following our long established rule of law in this State that the paramount principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in the light of all the circumstances under which it was made. *Forbes v. Wells Beach Casino, Inc.,* 307 A.2d 210, 216 (Me.1973); *Bell v. Jordan,* 102 Me. 67, 70, 65 A. 759 (1906). Such intention must be gathered from the written instrument, construed in respect to the subject-matter, the motive and purpose of making the agreement, and the object to be accomplished. *Roberts v. McIntire,* 84 Me. 362, 364, 24 A. 867 (1892).

██ In a multiple risk policy which, as in the instant case, was clearly intended to afford comprehensive liability in the three states of Maine, New Hampshire and Vermont, the authorities have treated such policies in respect to the location of a particular risk in one of the states covered by the contract as if a separate policy had been issued to cover only the risks in that state. The rationale for such a holding is based on the fact that the location of the insurance risk in a particular state pinpoints the jurisdiction that has the greatest interests in the contract and any issues arising therefrom. Thus, the rights of the insured and the responsibility of the insurer under their insurance contract in this case must be determined under Maine law. *See Consolidated Mutual Ins. Co. v. Radio Foods Corp.,* 108 N.H. 494, 240 A.2d 47, 49 (1968); *Grand Sheet Metal Products v. Aetna Casualty and Surety Co.,* 500 F.Supp. 904, 909 (D.Conn.1980); Restatement, *supra,* at § 193, comment f.

### 3. *Merits*

The insuring clause of the comprehensive general liability policy provides:

The company (Commercial Union Insurance Co.) will pay on behalf of the *insured* (Baybutt Construction Corp.) all sums which the insured shall become legally obligated to pay as damages because of

Coverage A bodily injury or

Coverage B property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . . .

The exclusions relevant to this case follow:

This insurance does not apply:

(a) to liability assumed by the *insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner;

. . . . .

(n) to *property damage* to the *named insured's products* arising out of such products or any part of such products;

(o) to *property damage* to work performed by or on behalf of the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith; . . . (emphases in original)

Thus, the instant insurance policy is structured in such a way that it provides, as

the basic part of the contract, a general insurance coverage to the insured against any liability it may incur on account of any bodily or property damage arising out of its particular activity, since the policy in broad terminology says that the company will pay on behalf of the insured *all* sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence, and, in connection therewith, the company shall have the duty to defend suits arising therefrom. But the defendant insurer claims that the policy's exclusions (n) and (o) recited above deny coverage under the policy and, therefore, that it has no duty to cover and defend the plaintiff in the action brought against it by the City of Waterville. The insured construction company plaintiff, on the other hand, relies on the exception contained in exclusion (a) to sustain its own claim of coverage under the policy.[2]

While standing alone, exclusions (n) and (o) of this standard comprehensive general liability policy would appear to exclude coverage to an insured contractor for a breach of contract action grounded upon faulty workmanship or materials, where the damages claimed are to the subject property of the construction contract, yet, when considered with the exception to exclusion (a), the overall correlative effect of these various clauses cloud the meaning, produce an ambiguity rising possibly to an internal inconsistency. Indeed, while exclusion (a) excludes from the insurance coverage

> "liability assumed by the insured under any contract or agreement except an incidental contract,"

the further exception therein to the effect that

> "this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner,"

constitutes a double negative, seemingly indicating that the general liability coverage of the policy does comprise coverage of liability for breach of contractual warranties. True, this exception to exclusion (a) may not be considered as creating coverage in and by itself in the area of breach of warranty of fitness or quality of products or workmanship and could reasonably be seen as a limit on the scope of exclusion (a); nevertheless, in doing so, it creates the appearance that the coverage affirmatively preserved by the exception from the stated exclusion is to be retained as part and parcel of the general liability coverage provided by the policy.

◼ The two exclusions (n) and (o), when viewed together with the exception to exclusion (a), absent any express and clear statement concerning their respective priority inter se, create an ambiguity respecting whether the exclusion or the exception to the exclusion is to be the prevailing operative segment of this comprehensive insurance contract in the case of breaches of warranty for defective materials and workmanship. The trial justice found this insurance contract to be ambiguous. Whether the insurance contract was ambiguous is a question of law for the court to resolve.

---

**2.** This was the posture of the case upon which the parties argued their conflicting contentions at the time of the initial oral argument. Pending decision on the appeal, this Court on its own initiative set the matter for reargument on November 9, 1982, for further consideration of the central question, whether an endorsement, L 9486, attached to the policy, had the effect of replacing any of the relevant exclusions previously called to the Court's attention, and, if so, whether any modification due to the reference endorsement had been waived by the defendant's failure to raise this defense at the proper time. The reargument has convinced us that

this endorsement, even though clearly intended to replace the previously stated exclusions (n) and (o), in no way removed the problem created by the remaining presence of exclusion (a). Therefore, without deciding the question of waiver, we will proceed on the basis that the endorsement, insofar as the facts of the instant case are concerned, introduces no material change in coverage respecting the rights and duties of the parties between them, so that we may decide the issue on the basis that the new exclusions (y) and (z) of the endorsement merely duplicate for our present purposes the original exclusions (n) and (o).

*Banker's Life Ins. Co. of Nebraska v. Eaton,* 430 A.2d 833, 834 (Me.1981). In this, there was no error.

In construing policies of insurance, this Court applies certain rational canons in aid of determining the effective meaning of their oftentimes complex language. One of these rules of construction is that a standard policy of insurance such as we are dealing with in the instant case, being the crafty product of insurers who made the policy, selected its language and ordained its particular structure, should be interpreted most strongly against the insurer. *Shaw v. Home Insurance Co.,* 146 Me. 453, 454, 82 A.2d 96, 97 (1951). *Patrons Mutual Insurance Co. v. Rideout,* 411 A.2d 673, 676 (Me. 1980). Ambiguities in an insurance contract are resolved against the insurer. *Reliable Furniture Co. v. Union Safe Deposit & Trust Co.,* 138 Me. 87, 90, 21 A.2d 834, 836 (1941); *Ross v. Travelers Indemnity Co.,* 325 A.2d 768, 770 (Me.1974).

Since there is ambiguity in the interrelationship of the exclusions of the instant policy, the following firmly established rule of construction comes into play to the effect that we will construe exclusions in an insurance contract (which exclusions are inserted therein in an attempt to limit the coverage of what was intended to be a comprehensive general liability insurance policy) strictly against the insurer and liberally in favor of the insured, so that the comprehensive general coverage afforded by the policy will be "excluded" by virtue of the operation of separate clauses of exclusion *only where* such separately stated "exclusions," when viewed as a whole, unambiguously and unequivocally negate coverage. *See Patrons-Oxford Mutual Insurance Co. v. Dodge,* 426 A.2d 888, 891–92 (Me. 1981). *See also Travelers Indemnity Company v. Dingwell,* 414 A.2d 220, 228 (Me. 1980); *Wescott v. Allstate Insurance,* 397 A.2d 156, 167 (Me.1979).

Contrary to the rule adopted in other jurisdictions, the rule in Maine is firmly embedded, that a contract of insurance, like any other contract, is to be construed in accordance with the intention of the parties, which is to be ascertained, when there is ambiguity, from an examination of the *whole* instrument. All parts and clauses, including exceptions and conditions, must be considered together in order to perceive if and how far one particular clause is explained, modified, limited or controlled by any other clause. *Swift v. Insurance Co.,* 125 Me. 255, 256, 132 A. 745 (1926); *Connellan v. Casualty Co.,* 134 Me. 104, 106–07, 182 A. 13 (1935); *Wheeler v. Phoenix Assurance Company, Ltd.,* 144 Me. 105, 107, 65 A.2d 10 (1949).

And, in applying these rules of construction to, and interpreting the meaning of, the instant insurance contract, the language used in the policy should be viewed from the standpoint of the average ordinary person who is untrained in either the law or the insurance field "in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Brown v. City of Laconia,* 118 N.H. 376, 386 A.2d 1276, 1277 (N.H.1978); *Federal Insurance Company v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050, 1053 (1976); *Benzer v. Iowa Mutual Tornado Insurance Ass'n,* 216 N.W.2d 385 (Ia. 1974). *See also Patrons Mutual Insurance Company v. Rideout,* 411 A.2d 673, 676 (Me. 1980); *Limberis v. Aetna Casualty and Surety Company,* 263 A.2d 83, 86 (Me.1970).

The question in this case is whether an ordinary person in the shoes of the plaintiff construction company would understand that the policy did not cover claims such as those pressed against it by the City of Waterville. We believe not. The objectively reasonable expectations of an insured will be honored even though painstaking study of the policy provisions would have negated those expectations. *Atwood v. Hartford Accident & Indemnity Co.,* 116 N.H. 636, 365 A.2d 744, 746 (1976). *See also Steigler v. Insurance Company of North America,* 384 A.2d 398, 401 (Del.Supr.1978); *C & J Fertilizer, Inc. v. Allied Mutual Insurance Co.,* 227 N.W.2d 169, 176 (Ia.1975);

13 Appleman, *Insurance Law and Practice,* § 7386 at 144–45 (1976 & Supp.1981) and cases cited therein.

We hold here that the language of this policy, construed as a whole, might reasonably be read by the ordinary intelligent insured, including ordinary business people in the construction field, as providing coverage for liability in breach of warranties of the type suffered in the instant case by the City of Waterville, notwithstanding that the insurance company through its sophisticated use of a complex structural format may have intended and considered them to be excluded. *Commercial Union Assurance Companies v. Gollan,* 118 N.H. 744, 394 A.2d 839 (1978); *Fresard v. Michigan Millers Mutual Insurance Co.,* 97 Mich.App. 584, 296 N.W.2d 112 (1980); *Federal Insurance Co. v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976); *United States Fire Insurance Co. v. Colver,* 600 P.2d 1, 4–5 (Alaska 1979) (Rabinowitz, J. dissenting); *Weedo v. Stone-E. Brick, Inc.,* 81 N.J. 233, 405 A.2d 788, 796–98 (1979) (Pashman, J., dissenting); *Haugan v. Home Indemnity Co.,* 86 S.D. 406, 197 N.W.2d 18, 23–24 (1972) (Winans, J. dissenting).[3]

Our Court in *Union Mutual Fire Insurance Co. v. Inhabitants of Topsham,* 441 A.2d 1012, 1015 (Me.1982) has stated that

[i]n order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage. There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage. *Moreover, where there is an ambiguity in the language of the policy, the doubt should be resolved in favor of finding that the insurer has a duty to defend the insured.* (Emphasis supplied)

**3.** Other courts following the lead of *Haugan v. Home Indemnity Co., supra,* have reached a contrary result only after engaging in an extensive and intricate analysis of the legal niceties of ambiguous and misleading insurance language and policy methodology to the detriment of the ordinary member of the purchasing pub-

Accord: *Horace Mann Insurance Co. v. Maine Teachers Ass'n,* 449 A.2d 358 (Me. 1982); *Travelers Indemnity Co. v. Dingwell,* 414 A.2d 220, 226 (Me.1980); *Marston v. Merchants Mutual Insurance Co.,* 319 A.2d 111, 114 (Me.1974). *See also Applegren v. Milbank Mutual Insurance Co.,* 268 N.W.2d 114 (N.D.1978).

### 4. Summary Judgment

Summary judgment is inappropriate, where there exists a genuine issue of material fact that remains unresolved. In the case of ambiguity in a written contract, the intent of the contracting parties may constitute such a factual evidentiary basis precluding the application of summary process. *See Banker's Life Insurance Co. of Nebraska v. Eaton,* 430 A.2d 833, 834 (Me. 1981). The instant insurance contract provides that

the company shall have the right and duty to defend any suit against the insured seeking damages on account of such *bodily injury* or *property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but ... (Emphasis in original)

As we said in *Union Mutual Fire Insurance Co. v. Inhabitants of Topsham, supra,* 441 A.2d at 1015, "where there is an ambiguity in the language of the policy, the doubt should be resolved (as a matter of law) in favor of finding that the insurer has a duty to defend the insured." Hence, summary judgment was proper to that extent.

But the summary judgment issued against the insurance company declared that the defendant company, not only was obligated to provide the plaintiff construc-

lic. We need *not,* however, disagree with or challenge the syllogism of the respective formulations entertained by those courts. We are more impressed by the approach we have adopted of the objective test of the reasonable ordinary person standing in the shoes of the insured.

tion company with the defense of the pending lawsuit of the City of Waterville, but also to provide the plaintiff with coverage in connection therewith. Since the record in this case does not completely eliminate the possibility of the existence of material facts respecting the intention of the parties in the purchase and sale of this insurance contract, summary judgment may have been premature insofar as it imposed on the insurer the obligation to provide coverage, meaning to compel satisfaction of any judgment recovered against the insured. *See American Policyholders' Insurance Co. v. Cumberland Cold Storage Co.,* 373 A.2d 247, 250 (Me.1977). *Cf. Tinker v. Continental Insurance Company,* 410 A.2d 550 (Me. 1980).

We, therefore, delete that portion of the judgment appealed from which states that the defendant Commercial Union is obligated to provide the plaintiff Baybutt Construction Corp. "with coverage for" the lawsuit of the City of Waterville, and, as so modified, we affirm the judgment.

The entry will be:

Declaratory judgment affirmed as modified.

Each party to bear its costs of this appeal.

GODFREY, NICHOLS and VIOLETTE, JJ., concurring.

WATHEN, Justice, with whom McKUSICK, Chief Justice, and ROBERTS, Justice, join, dissenting.

I concur with the conclusion of the majority that the rights of the parties must be determined under Maine law and that the Superior Court determination of coverage (duty to indemnify) be deleted. I dissent from that portion of the opinion of the majority finding a duty to defend on the facts of the present case.

The majority reaches their conclusion by finding an "ambiguity in the interrelationship of the exclusions" set forth in paragraphs (a), (n), and (o). They then follow the dictates of familiar law to construe the

ambiguity against the insurer. Certainly the Comprehensive General Liability policy in question is complex, but not unduly so. Examining it as a whole, I find no ambiguity and, hence, no occasion to construe in favor of either of the parties. Exclusions (n) and (o) clearly and unequivocally preclude coverage for the business risk that the insured contractor's product or completed work prove to be unsatisfactory. If, as in the instant case, a contractor performs unsatisfactory work, repair or replacement of the faulty work is a business expense for which insurance coverage is not provided. Conversely, if the faulty work causes an accident resulting in physical damage to others, coverage is afforded and the exception to exclusion (a) preserves coverage even if the claim is based upon a quasi-contractual warranty theory.

The foregoing summary of the relationship between the relevant provisions of the policy is in accord with the rulings of a majority of the courts which have decided the identical issue. The case of *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 405 A.2d 788 (1979) is particularly instructive. The court in *Weedo* was called upon to consider the same standardized policy as presented in this case, containing exclusions identical to (a), (n) and (o). The Appellate Division had ruled that the co-existence of the three exclusions created, "at the very least, an ambiguity which must be resolved in favor of the insured so as to provide coverage." 155 N.J.Super. at 486, 382 A.2d at 1159. The Supreme Court of New Jersey disagreed and stated:

Because we are of the view that exclusion "(a)" cannot serve to becloud the clear import of the "business risk" exclusions, we necessarily disagree that an ambiguity exists in the policy before us. . . . We conceive a genuine ambiguity to arise where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage. In that instance, application of the test of the objectively reasonable expectation of the insured often will result in

benefits of coverage never intended from the insurer's point of view. The benefits granted, however, will pertain to the same landscape of risk as contemplated by the policy in issue, that is, the "doctrine of ambiguity" works to effectuate the consumer's expectation that the policy purchased extended greater coverage in the particular underwriting area. ...

In this case Stone-E-Brick's interpretation of the policy would result in coverage for repair and replacement of its own faulty workmanship. This interpretation relies on the supposition that the exception to exclusion "(a)"—"but this exclusion does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner"—grants coverage for claims based on the warranty described. Not so. The contention runs directly counter to the basic principle that exclusion clauses subtract from coverage rather than grant it.

405 A.2d at 794–95.

I would adopt the view set forth in *Weedo*. The majority of those jurisdictions which have considered the issue have reached the same conclusion. *See Biebel Bros., Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir.1975); *Ross Island Sand & Gravel Co. v. General Insurance Co. of America*, 315 F.Supp. 402, 404 (D.Or.1970); aff'd., 472 F.2d 750 (9th Cir. 1973); *Adams Tree Service, Inc. v. Hawaiian Insurance & Guaranty Co.*, 117 Ariz. 385, 388–89, 573 P.2d 76, 79–80 (Ct.App. 1977); *B.A. Green Construction Co. v. Liberty Mutual Insurance Co.*, 213 Kan. 393, 397–98, 517 P.2d 563, 566–67 (1973); *Timberline Equipment Co. v. St. Paul Fire and Marine Insurance Co.*, 281 Or. 639, 645–46, 576 P.2d 1244, 1247–48 (1978); *Haugen v. Home Indemnity Co.*, 86 S.D. 406, 413, 197 N.W.2d 18, 22 (1972); *Overson v. United States Fidelity & Guaranty Co.*, Utah, 587 P.2d 149, 150–51 (1978); *Engine Service, Inc. v. Reliable Insurance Co.*, Wyo., 487 P.2d 474, 475–76 (1971).

The majority in this case relies upon three decisions and three dissenting opinions, 455 A.2d at 922, which as the *Weedo* court observed "[suffer] from the same misconception that the exception to "(a)" grants coverage which must be viewed in conjunction with the exclusions in the 'business risk' clauses." 405 A.2d at 796. The majority does not go so far as to claim that exclusion (a) grants coverage but, rather, states that "it creates the appearance of coverage" and an ambiguity, thereby foretelling the result. I reject that reasoning and would reverse the judgment below. We are surpassing the objectively reasonable expectation of the insured when we construe this policy to provide coverage for the repair and replacement of its own faulty workmanship or product.

On Motion for Reconsideration

MEMORANDUM OF DECISION.

The appeal in this case was decided on January 4, 1983. The defendant, pursuant to Rule 76A(b), M.R.Civ.P., has filed a motion for reconsideration on the following grounds:

> The Court's decision does not resolve the issues presented to the Superior Court.
>
> The Court's decision distinguishes the duty to indemnify from the duty to defend on a basis without foundation in the decision itself or in Maine law.

We deny the motion for reconsideration. We take the opportunity, however, to make a correction which does not alter the substance of the decision.

We said in the opinion:

> Since the record in this case does not completely eliminate the possibility of the existence of material facts respecting the intention of the parties in the purchase and sale of this insurance contract, summary judgment may have been premature insofar as it imposed on the insurer the obligation to provide coverage, meaning to compel satisfaction of any judgment recovered against the insured. *See American Policyholders' Insurance Co. v.*

*Cumberland Cold Storage Co.,* 373 A.2d 247, 250 (Me.1977). *Cf. Tinker v. Continental Insurance Company,* 410 A.2d 550 (Me.1980).

We withdraw and delete that part of the opinion as an improvident statement of our primary position on the issue and we replace it by the following:

In *American Policyholders' Insurance Company v. Cumberland Cold Storage,* 373 A.2d 247 (Me.1977) at 250, we recognized that there may be situations in which declaratory judgment may be entered simultaneously as to both the duty to defend and the duty to pay or indemnify. In the instant case, as in the Cumberland Cold Storage case, the Superior Court Justice, in determining whether the insurance company had a duty to defend the plaintiff under the reference insurance policy, did apply the proper and exclusive comparison test between the allegations of the underlying complaint and the terms of the policy. *See also, Travelers Indemnity Co. v. Dingwell,* 414 A.2d 220 (Me.1980) at 227. The Superior Court's determination that the allegations of the underlying complaint did bring the claim of damage of the City of Waterville within the apparent coverage of the insurance policy as interpreted by a majority of this Court properly established the defendant's duty to defend. But the Superior Court in this declaratory judgment action was not presented with undisputed facts which would necessarily be determinative of coverage, a necessary prerequisite for the issuance of a simultaneous summary judgment for the plaintiff on both questions, the insurance company's duty to defend and to indemnify. *See Union Mutual Fire Insurance Co. v. Inhabitants of Town of Topsham,* 441 A.2d 1012 (Me.1982).

In all other respects, the decision is reaffirmed.

The entry will be:

Motion for reconsideration denied.

All concurring.