**Sue T. TINKER et al.**

v.

**CONTINENTAL INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Jan. 30, 1980.

---

**551**

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

WERNICK, Justice.

The personal representatives, respectively, of Glenn J. Tinker, Larry Snowman and Brian H. Whittier, all deceased, as well as Frank and Cynthia Carballo (husband and wife), Allstate Insurance Company and the State of Maine Department of Transportation, joined as plaintiffs in an action for declaratory judgment brought in the Superior Court (Kennebec County) against the defendant Continental Insurance Company (Continental). A single issue was presented for determination: whether Whittier was an "insured" under the automobile liability insurance policy issued by Continental to the State of Maine when, on December 18, 1975, he was operating an automobile *owned by him* in the discharge of official State business. The Superior Court concluded that Whittier was not such an "insured", and from the entry of the judgment so adjudicating the plaintiff State of Maine Department of Transportation has appealed to this Court.

We deny the appeal and affirm the judgment of the Superior Court.

On December 18, 1975 Brian H. Whittier, while operating an automobile owned by him, was involved in a collision which caused his death and the deaths of two passengers in the automobile, Glenn J. Tinker and Larry Snowman. A third passenger, Frank Carballo, was seriously injured. Whittier and his three passengers were employees of the State of Maine Department of Transportation. At the time of the collision they were travelling in the automobile on official State business. Accordingly, as a self-insurer under the Worker's Compensation Act, 39 M.R.S.A. § 23, the State began paying worker's compensation benefits to Carballo and the estates of the deceased occupants of the automobile.

Carballo and his wife, and the personal representatives of the decedents Tinker and Snowman, instituted civil actions against the Estate of Whittier alleging causes of

Stephen L. Wessler, Asst. Atty. Gen., Dept. of Transp. (orally), Augusta, Joseph B. Pellicani, Peter B. Sulides, Edward B. Miller, Rockland, Jack Simmons, Lewiston, for plaintiffs.

Preti, Flaherty & Beliveau, John Paul Erler (orally), Joel C. Martin, Portland, for defendant.

action against Whittier, as a third-person tortfeasor, predicated on his negligence in operating the automobile. Under an automobile liability insurance policy Allstate Insurance Company had with Whittier, which was in full force and effect at the time of the collision, Allstate undertook the defense of these suits. The demands, however, were in excess of the $100,000.00 limit for multiple injuries contained in the Allstate policy. Hence, in hopes of providing additional proceeds for the satisfaction of any judgments obtained, the declaratory judgment action was brought to achieve a determination that the liability policy issued by Continental to the State of Maine afforded insurance protection to Whittier as an insured under that policy.[1]

For a number of years the State of Maine has purchased comprehensive automobile liability protection on the basis of competitive bidding. From 1968 to 1971 the State's fleet coverage was provided by Continental National American Group (CNA). In 1969, pursuant to the recommendation of The Maine Insurance Advisory Board,[2] the State requested that CNA delete the "fellow employee exclusion", so-called, from the policy then in force. This was accomplished by an endorsement to the policy. During the years 1971 to 1974 the fleet coverage was provided by Home Indemnity Insurance Company. In 1975, Continental was awarded the fleet coverage contract for the years 1975 to 1978. The policies issued by both Home Indemnity and Continental were standard form policies, and to each of them was appended an endorsement purporting to delete the "fellow employee exclusion." In each case the endorsement was nearly identical to that originally written by CNA.

The Continental policy here under consideration obligated Continental to

"pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury or . . .

property damage to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, . . . of any automobile . . ."

The Continental form policy contains an "exclusion" provision, here pertinent, as follows:

"*Exclusions*

"This insurance does not apply:

"(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured . . . ."

That form policy also states under the heading "Persons Insured":

"None of the following is an insured:

"(i) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;"

"(ii) . . . the owner of a non-owned automobile . . . ."

By these specific provisions of Continental's form policy it is plain that Whittier was not afforded insurance protection as an "insured." The narrow issue for decision, then, is whether such protection was effectuated by virtue of the endorsement to the form policy.

The endorsement purported to delete subdivision (i) under "Persons Insured", as above-described. It also added amending language to the subdivision (c) exclusion, above-described, so that, as here pertinent, it was made to read:

"*Exclusions*

"This insurance does not apply:

"(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured . . . except with respect to a claim by one employee of the named insured against another employee of the named

---

1. The State of Maine has a lien on the proceeds of any recovery to the extent of the compensation benefits paid. See 39 M.R.S.A. § 68. The amount of the lien will exceed the amount recoverable under the Allstate policy.

2. See 5 M.R.S.A. §§ 1725 *et seq.*

insured arising out of the operation, maintenance or use of the automobile." (the matter added by the endorsement is underscored)

Subdivision (ii) remained unaffected by the endorsement.

The Justice presiding in the Superior Court found that the Continental policy, as modified by the endorsement, was ambiguous as to whether Whittier was given insurance protection as an "insured." Although the plain language of the endorsement removed from the form policy two of the "exclusions" applicable to Whittier, ambiguity existed because one exclusion appeared to have been permitted to remain: the exclusion, as an "insured" under the policy, of an employee who is operating an automobile *not owned* by the State of Maine. Because of this ambiguity, arising from the endorsement's use of the word "automobile" without qualification, the presiding Justice admitted extrinsic testimony and documents to assist him in reaching a determination of the intention the parties had *expressed* by the words they used. By resort to this extrinsic evidence the Justice found that the intention of the parties, as expressed in the form policy together with the endorsement, was that insurance protection was *not* extended to a State employee, as an "insured", who, in operating his *own* automobile on the official business of his employment, injures "fellow employees."

In support of this interpretation the presiding Justice noted that the policy consistently excluded coverage for State employees operating their own automobiles, citing as an example the Maine State Police Endorsement.[3] Moreover, responding to the contention that ambiguities in insurance contracts should be construed against the insurer, the Justice found that this rule of strict construction is inapplicable to the instant case, for the following reasons:

1) the rule applies only after the identity of the insured has been determined;

2) the rule does not apply between two insurance companies or between a subrogee and an insurance company because the rule was designed only to protect the premium payer;

3) the rule does not apply where the purchaser is not an unsophisticated consumer;

4) the rule does not apply in the absence of a disparity of bargaining power; and

5) the rule does not apply when the parties, by their acts, have placed a construction on the contract showing what was, in fact, intended.

The parties do not dispute the Superior Court's finding that the Continental policy, as modified by endorsement, is ambiguous.[4] Rather, it is the contention of the State of Maine, as the appellant before this Court, that the presiding Justice erred in refusing to resolve the ambiguity by resorting to that canon of interpretation by which an ambiguity in an insurance contract is construed against the insurer, as the *drafter* of the policy.

We reject this contention.

Where contractual language at issue in a case is ambiguous in its meaning, and the ambiguity cannot be resolved by looking to the internal language of the contract as a whole, extrinsic evidence may be considered to assist in interpreting the

---

**3.** Subdivision 2 of the Maine State Police Endorsement explicitly provides:

"The insurance does not apply to any automobile owned by such employee or by a member of his household or furnished for the regular use of such employee."

**4.** Although in its brief the State of Maine argued that the policy was not ambiguous, it conceded this point at oral argument. The basis of its oral argument was that elsewhere in the policy the word "automobile" was always modified by such words as "owned", "non-

owned", "hired", or "any." Particular emphasis was placed on the Maine State Police Endorsement which explicitly excludes coverage for the use of an owned automobile. See n. 3 *supra*. The State argued in its brief that because Continental knew how to write such an exclusion, it intended not to have such exclusion when it drafted the fellow employee endorsement. Our view is that this merely confirms the existence of an ambiguity which is to be resolved by resort to other means of interpretation.

meaning of the language at issue as the expression of the intent of the parties. *T–M Oil Co. v. Pasquale,* Me., 388 A.2d 82 (1978). It is true, as we have stated in the past, that

> "if the language of an insurance policy is ambiguous, or susceptible of interpretations differing in import, construction should be most strongly against the insurer . . . ." *Johnson v. American Automobile Insurance Company,* 131 Me. 288, 292, 161 A. 496 (1932)

However, when construing a contract, the court may not enlarge or diminish its terms. The court's function is not to make a *new* contract for the parties, but

> "to ascertain the meaning and intention of that *actually made.*" *Id.* at 293, 161 A. at 498. (emphasis added)

The rule of strict construction, therefore, is a rule of last resort which must not be permitted to frustrate the intention the parties have expressed, if that can otherwise be ascertained. *See T–M Oil Co.,* supra, at 86.

■ The Superior Court Justice, therefore, correctly refused to resort to the canon of interpretation, of construing language most strictly against the insurance company as the drafter of the policy, until he had evaluated the pertinent extrinsic evidence which was proffered and was admissible.

■ Moreover, we agree with the conclusion of the presiding Justice that the several documents received in evidence, together with the extrinsic circumstances revealed by testimony, showed that the intention of the parties, as expressed in the form policy and the endorsement, was to provide insurance protection, as an "insured", to a State employee who, while operating a *State-owned* automobile in the discharge of official State business, injures a fellow employee; no such protection is afforded if the automobile is owned by the employee operator.[5]

The entry is:

Appeal denied.

Judgment affirmed.

POMEROY and ARCHIBALD, JJ., did not sit.

---

5. We therefore need not consider the other reasons assigned by the presiding Justice for refusing to resort to the canon of interpretation that ambiguous language should be read most strictly against the insurer as the drafter of the language of the insurance policy.