## MAINE GAS & APPLIANCES, INC.

### v.

### Harris B. SIEGEL[1].

Supreme Judicial Court of Maine.

Argued Nov. 3, 1981.

Decided Dec. 24, 1981.

1. We have recaptioned the case by deleting Nancy T. Siegel, Robert W. Diehl, and Thomas House Inn, Inc. as parties. Neither remaining party asserts any issues involving the judgments below concerning Nancy T. Siegel, Diehl, or Thomas House Inn, Inc., and these three parties below did not participate in either the briefing or the argument of this appeal. *See Hall v. United States Fidelity & Guaranty Co.,* Me., 436 A.2d 863 (1981).

Brian R. Olson (orally), North Windham, for plaintiff.

Thomas E. Barker, Jr., (orally), Portland, for Siegels.

Keith A. Powers, Portland, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, CARTER and VIOLETTE, JJ.

CARTER, Justice.

The plaintiff, Maine Gas & Appliances, Inc., commenced an action against the defendant, Harris B. Siegel, seeking to recover a sum due under a promissory note which the defendant had allegedly signed in an individual capacity. As executed, the note took the following form:

### PROMISSORY NOTE

For value received, the makers hereon, jointly and/or severally shall pay the order of Main Gas & Appliances, Inc., on demand, the sum of Five thousand Six hundred, Sixty-Three and 07/100 Dollars,

($5663.07), together with interest thereon at the rate of twelve percent (12%) per annum from January 1, 1977, until paid.

Dated at Maplewood, New Jersey this *23rd* day of April, 1977

| WITNESS | THOMAS HOUSE INN, INC. |
|---|---|
| /s/ Harris B. Siegel | By /s/ Nancy T. Siegel |
| | Nancy T. Siegel, Pres. |
| /s/ Nancy T. Siegel | By /s/ Harris B. Siegel |
| | Harris B. Siegel |
| /s/ Harris B. Siegel | /s/ Robert W. Diehl |
| | Robert W. Diehl |

A Cumberland County jury found the defendant personally obligated to the plaintiff on the note.[2] Here, the defendant appeals from the judgment entered against him by the Superior Court on the dual grounds that he signed the note only in a representative capacity as a matter of law and that a letter sent to him by the plaintiff's then vice-president and general counsel, manifesting an intent that the defendant be personally liable on the note, was improperly admitted into evidence. We affirm the judgment.

As a preliminary matter, we note that the facts of this case generate a question as to whether Maine or New Jersey law controls its outcome.[3] Yet, both states have adopted the dispositive provision of the Uniform Commercial Code. 11 M.R.S.A. § 3–403; N.J.Stat.Ann. § 12A:3–403 (West). Further, there exists no reported decision in either jurisdiction which examines the statute in such a way as to compel a particular holding here. Resort must thereby be made to the developed law of other jurisdictions. Therefore, because the law of Maine and New Jersey relevant to this action is to be determined by the existing statutory provisions which are identical, we simply apply Maine law presuming that a New Jersey court would decide the issues raised herein on the basis of the existing statutory provisions as would a Maine court. There is no need for us to decide whether the commercial transaction giving rise to the action

---

2. Seven other counts included in Maine Gas' complaint have been disposed of by summary judgments, jury verdicts, and dismissals by the parties. They form no part of this appeal.

3. This issue, however, has not been raised on this appeal, and there is no suggestion that it was addressed below.

here on appeal bears "an appropriate relation to this State," enabling us to apply the law of Maine to the exclusion of that of another jurisdiction. 11 M.R.S.A. § 1–105. *See Industrial National Bank v. Leo's Used Car Exchange, Inc.,* 362 Mass. 797, 800, n.3 291 N.E.2d 603, 605 n.3 (1973).

## I.

■ Siegel asserts that, as a matter of law, he cannot be found personally obligated on the note. The liability of an authorized representative who signs his own name to commercial paper is governed by 11 M.R.S.A. § 3–403 and its identical counterpart, N.J.Stat.Ann. § 12A:3–403 (West).[4] This statute, however, establishes the representative capacity of the signatory as a matter of law only where "the name of an organization [is] preceded or followed by the name *and office* of an authorized individual. . . ." (Emphasis added.) § 3–403(3). Here, Siegel's name was not accompanied by a designation of office. Section 3–403 thus does not operate in this instance to render Siegel's signature a representative one as a matter of law.

The defendant also claims that the signature configurations noted in the Uniform Commercial Code Comment to § 3–403 also mandate the conclusion that he signed the note in only a representative capacity. In particular, he relies on the example, "Peter Pringle by Arthur Adams, Agent," which the Comment describes as unambiguously demonstrating representation. Reliance on this model form, however, is misplaced because it suggests that Siegel signed unambiguously as an agent. Here, the note was

signed, "THOMAS HOUSE INN, INC. By Harris B. Siegel." The absence of the express designation "Agent" serves to distinguish the manner in which Siegel signed the note from the examplar characterized as unambiguous by the drafters of the Code.

*North Carolina Equipment Co. v. De-Bruhl,* 28 N.C.App. 330, 220 S.E.2d 867, *cert. denied,* 289 N.C. 451, 223 S.E.2d 160 (1976) involved a note which was signed in a manner identical to that found here. There, the corporation's name was followed by, "By James DeBruhl (seal)." The court applied section 3–403(2)(b) and concluded that, on the basis of the parol evidence below, the trial court properly found that the parties did not intend DeBruhl to be personally obligated on the note. In determining that section 3–403(2)(b) controlled the outcome of the case, the court must have concluded that the word "By" does not show that the representative signed in an unambiguously representative capacity. *See also* Restatement (Second) of Agency § 156, Comment a (1958), stating that "[i]n the absence of a contrary manifestation in the document, the following signatures and descriptions, among others, create an *inference* that the principal and not the agent is a party: The principal's name followed by the agent's name preceded by a preposition such as 'by' or 'per' . . . ." (Emphasis added.)

We further note that the terms of the note itself create an ambiguity as to Harris Siegel's signatory capacity because the instrument refers to "makers" and the obligation is specified as joint "and/or" several.

---

4. This section reads in full:

§ 3–403. Signature by authorized representative

(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) Is personally obligated, if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) Except as otherwise established between the immediate parties, is personally obligated, if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established, the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity.

The defendant argues that there may be two makers: the corporation and Diehl, whose signature is not preceded by "By" and whose status in the corporation is not identified. This observation, however, does not eliminate the possibility that Siegel was also intended to be a maker who is jointly and severally liable on the note. Further, the more thorough attempt to demonstrate Nancy T. Siegel's representative capacity raises a question as to whether such a demonstration was intended as to Harris B. Siegel's capacity. Finally, another person had previously signed the note on behalf of the principal, Thomas House Inn, Inc. Harris Seigel's signature was thus apparently unnecessary to bind the corporation.

We therefore hold that, even if section 3–403 operates to preclude the personal liability of a representative who has signed an instrument which names the person represented and shows that the signatory signed in a representative capacity, this note does not unambiguously demonstrate as fact an intent to execute the note within the scope of an agency relationship. There therefore exists an ambiguity as to Siegel's signatory capacity, and his personal liability on the note is not foreclosed as a matter of law.

## II.

The express terms of section 3–403(2)(b) permit the immediate parties to a note, in an action between them, to establish the representative capacity of the signatory when the instrument itself, as here, identifies the person represented but does not unambiguously show that an agency relationship has been exercised. *Accord, Moore v. White,* 603 P.2d 1119, 1122 (Okla. 1979); *Rotuba Extruders, Inc. v. Ceppos,* 46 N.Y.2d 223, 228–29, 413 N.Y.S.2d 141, 143–44, 385 N.E.2d 1068, 1070–71 (1978). *See also, Tinker v. Continental Insurance Co.,* Me., 410 A.2d 550, 553–54 (1980), holding that "[w]here contractual language at issue in a case is ambiguous in its meaning, and the ambiguity cannot be resolved by looking to the internal language of the contract as a whole, extrinsic evidence may be considered to assist in interpreting the mean-

ing of the language at issue as the expression of the intent of the parties."

As parole evidence offered to show that Harris B. Siegel signed the note in an individual capacity, the court admitted into evidence a letter that Orman F. Cummings, then the vice president and general counsel to Maine Gas, sent to Siegel prior to the time he signed the note. In it, Cummings wrote that Siegel's "personal guarantee of the corporation obligation has been established," and that the April 23 note will make that obligation "more obvious." Here, Siegel argues that the letter is inadmissible as hearsay. M.R.Evid. 801(c).

Even if this challenge was properly preserved, an issue which we need not decide, the admission of the letter cannot be viewed as error. The letter was offered, not to prove the truth of its contents, but to tend to show the parties' understanding of the obligations created by the note. Admissibility of parol evidence is premised on an ambiguity in the terms of the note; this evidence was offered to reveal that which the parties had intended when they fixed the obligation. Cummings' letter thus only reflected *his* notion of the type of liability intended to be created by the note. It did not purport to show that the note *in fact* imposed a personal obligation on Siegel, but solely that Cummings *intended* that it do so. Therefore, the letter as received into evidence, did not constitute hearsay. *See Colby v. Tarr,* 139 Me. 277, 29 A.2d 749 (1943) (holding as admissible the testimony of a conversation offered to show the purpose for which a check was tendered).

The entry is:

Judgment affirmed.

All concurring.