McKUSICK, Chief Justice.
 

 Plaintiff Whit Shaw Associates appeals the dismissal by the Superior Court (Cumberland County) of its complaint seeking indemnification from Madelyn Wardwell, individually, under a brokerage agreement she executed with plaintiff to promote the sale of a bakery business. The Superior Court in granting Wardwell’s motion under M.R.Civ.P. 12(b)(6), construed the brokerage agreement to bind Wardwell’s corporation, and not Wardwell individually. On appeal, we find that the brokerage agreement is ambiguous as to whether Wardwell assumed any obligation to indemnify Whit Shaw Associates (Whit Shaw), and we hold that the pleadings do not foreclose plaintiff from proving that fact at trial. Accordingly, we vacate the dismissal.
 

 On November 12, 1980, Madelyn Ward-well signed a brokerage agreement with Whit Shaw, a business brokerage firm, granting it an exclusive right to sell “Eith’s Enterprises, Inc.” (Eith’s), a bakery and variety business owned by Wardwell and her husband and daughter. Through the efforts of Whit Shaw, Nichols Enterprises bought the capital stock of Eith’s on June 18, 1981. Some two and a half years later, Nichols commenced a Chapter 11 proceeding in the United States Bankruptcy Court. During the pendency of that proceeding, Nichols sued both Wardwell and Whit Shaw, alleging that the brochure prepared by Whit Shaw to promote the sale contained materia] misrepresentations of fact. Nichols later voluntarily dismissed its lawsuit. On July 16,1984, Whit Shaw filed the present suit against Wardwell, seeking indemnification for the costs and attorney’s fees it had incurred as a result of the Nichols suit. Whit Shaw based its claim on the indemnity provision appearing in paragraph 4 of the brokerage agreement:
 

 4.
 
 Brochure.
 
 Broker agrees to prepare for Owner a brochure describing the business being offered for sale. Owner shall review, make corrections as needed and give his written approval to the final version of said brochure.
 
 Owner shall indemnify and hold harmless the Broker
 
 for any loss, injury or damage suffered by Broker by reason of any claim arising out of or by reason of an error, misleading statement or misrepresentation contained in said brochure.
 

 (Emphasis added)
 

 The Superior Court dismissed Whit Shaw’s complaint against Wardwell under M.R.Civ.P. 12(b)(6) because it held as a matter of law that the corporation Eith’s, and not Madelyn Wardwell individually, was the “Owner” liable under the indemnity clause. We disagree. The term “Owner” was defined in the first sentence of the brokerage agreement:
 

 Agreement made as of November 12, 1980, by and between
 
 Ms. Madeline
 
 [sic]
 
 Wardwell, President, EITH’S ENTERPRISES, INC.,
 
 25 Hampshire Street, Auburn, Maine
 
 (hereinafter called the “Owner’)
 
 and Whit Shaw Associates, 56 Exchange Street, Portland, Maine, (hereinafter called the “Broker”).
 

 (Emphasis added) We have carefully reviewed the written brokerage agreement at issue in this controversy and find that its definition of “Owner,” for purposes of identifying who undertook to indemnify Whit Shaw, is ambiguous. Who the “Owner” is cannot be determined without the consideration of extrinsic evidence. The Superior Court erred in dismissing the case on the pleadings.
 

 “[A] complaint should not be dismissed under Rule 12(b)(6) unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.”
 
 Ace
 
 
 *1371
 

 Ambulance Service, Inc. v. City of Augusta,
 
 337 A.2d 661, 662 (Me.1975) (emphasis omitted). The initial clause of the contract defining the “Owner” can be interpreted to mean that Wardwell, as the principal owner of Eith’s, was a party to the brokerage agreement in her individual capacity; or just as easily it can be taken to mean that Wardwell, as president of the corporation, was executing the agreement merely as agent for Eith’s. The other language of the brokerage agreement, as the parties have ably demonstrated in their arguments before this court, can also support either interpretation of the contract.
 

 “[T]he paramount principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in the light of all the circumstances under which it was made.”
 
 Baybutt Construction Corp. v. Commercial Union Insurance Co.,
 
 455 A.2d 914, 919 (Me.1983). In this case where the agreement is ambiguous on its face, the trial court may admit extrinsic evidence, usually excluded by the parol evidence rule, that bears on the intent of the parties.
 
 See Tinkery. Continental Insurance Co.,
 
 410 A.2d 550, 553-54 (Me.1980).
 

 Given the facial ambiguity of the term “Owner” in the brokerage agreement, Whit Shaw was entitled to present, if it could, extrinsic evidence tending to prove that the parties intended Madelyn Ward-well to be liable individually on the indemnification agreement. The Superior Court’s dismissal under Rule 12(b)(6) was error.
 

 The entry is:
 

 Judgment vacated.
 

 Remanded for further proceedings consistent with the opinion herein.
 

 Costs on appeal allowed to appellant.
 

 All concurring.