**VIGILANT INSURANCE COMPANY,**
**Plaintiff,**

v.

**Walter E. BURNELL and Web Electrical, Inc. d/b/a Web Electric, Inc., Defendants.**

Civ. No. 93–276–P–C.

United States District Court, D. Maine.

Feb. 16, 1994.

Benjamin P. Zuckerman, Eileen M. King, Verrill & Dana, Portland, ME, for plaintiff.

U. Charles Remmel, II, Kelly, Remmel & Zimmerman, Portland, ME, for defendants.

*MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT BURNELL'S MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

This action was commenced by Plaintiff Vigilant Insurance Company to collect a debt allegedly owed by Defendants Walter E.

Burnell ("Burnell") and WEB Electrical, Inc. ("WEB") pursuant to a General Indemnity Agreement signed by Burnell and WEB in favor of MCA Insurance ("MCA") on January 10, 1992 (Docket No. 1, Exhibit A). The General Indemnity Agreement was signed for the purpose of obtaining surety bonds for electrical construction contracts. Pursuant to a Novation Agreement, Vigilant Insurance Company ("Vigilant") became the surety in place of MCA Insurance in January 1993. When WEB defaulted on electrical construction contracts, Vigilant paid claims on the surety bonds for labor, materials, supplies, and for the cost of completion of the electrical construction subcontract. The Complaint (Docket No. 1) consists of two counts. Count I is against WEB for breach of the General Indemnity Agreement signed on January 10, 1992. Complaint, ¶¶ 23–26. Count II is against Walter E. Burnell, as an individual, for breach of the same agreement. *Id.* at ¶¶ 27–30.

Now pending before the Court is Defendant Burnell's Motion for Summary Judgment on Count II. Burnell contends that because he did not sign the Novation Agreement in his individual capacity, there is no contractual agreement that runs between Burnell, as an individual, and Vigilant. Therefore, he argues that he is entitled to summary judgment. Vigilant, for its part, contends that the Novation Agreement had the effect of making it a "Surety" within the meaning of the General Indemnification Agreement signed by both WEB and Burnell in his individual capacity. They point out that Burnell's signature on the Novation Agreement indicates no Corporate designation, and that Vigilant assumed the surety bonds with the understanding that the General Indemnification Agreement remained in force. Affidavit of P. Benjamin Zuckerman (Docket No. 12) ¶ 5. Vigilant also contends that the Novation Agreement was intended to and did benefit Burnell as an individual. The implication of these arguments is that the parties, including Burnell, intended the Novation Agreement to be binding and to incorporate the surety bonds as well as the underlying General Indemnification Agreement. Vigilant's brief also appears to suggest that, as an "intended beneficiary" of the novation, Burnell's assent to the novation was not necessary given his failure to disclaim the novation.

To prevail on a motion for summary judgment under Federal Rule of Civil Procedure 56,

> the movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988).

*Brennan v. Hendrigan,* 888 F.2d 189, 191 (1st Cir.1989). In order to evaluate Burnell's motion, the Court must review the facts and the inferences that can be drawn therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress and Company,* 398 U.S. 144, 157–58, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). A brief statement of the undisputed facts follows.

### MATERIAL FACTS

WEB Electrical, Inc. is an electrical contractor whose sole shareholder and president is Walter E. Burnell. MCA Insurance Company was an insurance company in the business of providing surety bonds and insurance on construction projects. On January 10, 1992, Burnell signed a General Indemnity Agreement (Docket No. 1, Exhibit A), in his individual capacity and as president of WEB, in favor of MCA Insurance Company in order to obtain surety bonding for WEB's electrical construction work. In this General Indemnity Agreement, both WEB and Burnell, as an individual, agreed to indemnify MCA "as surety" from all losses and ex-

penses MCA incurred in connection with surety bonds issued for the benefit of WEB. A "surety" is defined in the General Indemnification Agreement as "MCA Insurance Company and any person or company joining with it in executing any Bond, executing any Bond at its request, or providing reinsurance to it with respect to any Bond." *Id.* at 1.

In June of 1992, WEB obtained a subcontract (Docket No. 1, Exhibit B) from Ouellet Associates, Inc. (Ouellet) to perform electrical contracting work in connection with a new residence project at Bates College in Lewiston, Maine. WEB obtained a Subcontract Performance Bond and a Subcontractor Labor and Material Payment Bond (Docket No. 1, Exhibit C) from MCA which ran in favor of Ouellet, the obligee, as general contractor of the Bates College construction project. Under the terms of the bonds, MCA was bound as surety in the amount of $447,000.

During the fall of 1992, the State of Oklahoma Insurance Commissioner began delinquency proceedings against MCA due to losses it had sustained in connection with Hurricane Andrew. Pursuant to a Provisional order authorizing the transfer of the MCA Bond Department to Vigilant, Vigilant notified WEB and Ouellet of the proposed transfer of the bonds from MCA to Vigilant by letter dated December 3, 1992. (Docket No. 1, Exhibit D). The letter specified that in order to substitute Vigilant for MCA, "a signed acceptance of all four parties—MCA as the original surety, Vigilant as its replacement, the Bond Principal, and the Obligee"—was required.

In December of 1992, a Novation Agreement (Docket No. 1, Exhibit E) was entered into by Vigilant and MCA whereby Vigilant assumed the obligations of MCA under the surety bonds. The Novation Agreement made several references to the original bonds, which were "incorporated herein by reference." This agreement was "Accepted and Agreed to" on December 26, 1992, by Ouellet and on December 29, 1992, by WEB. Walter E. Burnell signed the Novation Agreement under the typewritten designation "WEB Electrical, Inc. Principal" on a line next to the word "by." He did not indicate a corporate designation by his name.

The transfer was approved by a Final Order in 1993 from the District Court for Oklahoma County.

In May of 1993, Ouellet was notified that WEB had abandoned its work on the electrical subcontract. As a result of WEB's abandonment, claims were made against Vigilant as surety of the bonds. Vigilant paid $218,000 on these claims. Vigilant then made several demands against WEB and Burnell, pursuant to the General Indemnity Agreement of January 10, 1992, for reimbursement of $218,000 and $1,533 in premiums due. WEB and Burnell have denied liability to Vigilant.

### DISCUSSION

◼ Having reviewed the record, including the affidavits, the novation agreement, the surety bonds, and the General Indemnification Agreement, the Court concludes that there is a genuine issue of material fact as to whether the parties intended this agreement to substitute Vigilant for MCA as obligee of Burnell's duty to indemnify MCA. The question of the intent of parties to enter into an agreement is a classic issue of fact for the jury. *Akerley v. Lammi,* 217 A.2d 396 (Me. 1966); *Harriman v. Maddocks,* 518 A.2d 1027 (Me.1986); *All Hit Radio, Inc. v. Communications Broadcasting Affiliates, Inc.,* 101 F.R.D. 765 (D.Me.1984). Similarly, disputes over who is bound by an agreement may raise an issue of material fact appropriate for the jury. *See* 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure,* § 2730 at 288–89 & n. 20 (2d Ed.1983).

◼ Given this general rule, Defendant Burnell could prevail on his motion for summary judgment only if the Court were satisfied that the Novation Agreement is not ambiguous and cannot be interpreted to incorporate an indemnification agreement between Burnell and Vigilant. Under Maine law, an agreement is ambiguous if it is "reasonably susceptible of different interpretations." *Gagne v. Ralph Pill Electric Supply Co.,* 630 F.Supp. 1095, 1098 (D.Me.1986) (citing *Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1387 (Me.1983)). In order to determine whether the Novation

Agreement is unambiguous, the Court must determine, as a threshold issue, whether it is a complete integration of the parties' agreement. *Interstate Industrial Uniform Rental Service, Inc. v. F.R. LePage Bakery, Inc.,* 413 A.2d 516, 519 (Me.1980). The issue of whether an agreement is integrated is an issue of law for the Court. *Id.* In this case, it is clear on even a cursory review that the Novation Agreement is not, and was not intended to be, a complete integration of the agreement between the parties. First, the Novation Agreement specifically incorporates by reference the underlying security bonds. Moreover, as Burnell himself points out, the Novation Agreement is silent as to what obligations, if any, were "Accepted and Agreed to" by WEB and/or Burnell. *See id.* at 15 (finding an agreement only partially integrated because "[i]t contained no reference, for example, to Interstate's initial duties....."). Because the agreement is not integrated, parol evidence may be considered to give effect to the intention of the parties "in the light of all the circumstances under which [the agreement] was made." *Whit Shaw Associates v. Wardwell,* 494 A.2d 1385, 1386 (Me.1985). In *Whit Shaw Associates,* as in the present matter, the issue was whether the Defendant was personally bound by a written agreement to indemnify the plaintiff in that case. There, Whit Shaw was entitled to bring in extrinsic evidence that tended to show that Wardwell was bound in her individual capacity to indemnify Whit Shaw.

Here, the Court is satisfied that, in light of the circumstances in which the Novation Agreement was made, the intention of the parties regarding indemnification is ambiguous. As the Maine Law Court has made clear, the intention of the parties to a contract must be gathered from the writing construed with an eye "to the situation of the parties, the subject matter, the motive and purpose of making the agreement, and the object to be consummated." *Monk v. Morton,* 139 Me. 291, 30 A.2d 17 (1943). Examining the Novation Agreement in the context of the entire course of dealings, and of the ·object of the agreement, gives weight to Vigilant's argument that the Novation Agreement was intended to incorporate the original General Indemnity Agreement. It seems highly unlikely, under the circumstances, that Vigilant would have agreed to issue a surety bond in the amount of $447,000 without indemnification from anyone. Nevertheless, the Novation Agreement is silent as to indemnification from either WEB or Burnell. Given "the subject matter, the motive and purpose of making the agreement," it seems that Vigilant's claim that the parties intended that the original General Indemnity Agreement remain in effect is a possible interpretation of the Novation Agreement. This interpretation is supported by Plaintiff's affidavit indicating that the Novation Agreement was entered into on the condition that the General Indemnity Agreement remain in place. *Affidavit of Benjamin Zuckerman* (Docket No. 12), ¶ 5. Such evidence of intent to incorporate another agreement is clearly relevant and admissible. *See Connell v. Aetna Life & Casualty Co.,* 436 A.2d 408 (Me. 1981) (statements of lawyer's intent on integration issue was admissible). Because the Novation Agreement is susceptible to this interpretation, there is a genuine issue of fact for the jury to determine.

Not only does the silence of the Novation Agreement on the issue of indemnification create ambiguity, but so does the specific language of the Novation Agreement. Burnell contends that his signature was nothing more than an acknowledgement, in his representative capacity, of a novation that had nothing to do with him. However, the words "Accepted and Agreed to" above his signature connote more than mere acknowledgment of the Novation Agreement. The letter of December 3, 1992, indicating that the agreement of all parties was required for the Novation Agreement, provides a context in which a factfinder might determine that Burnell understood that the Novation Agreement was fully intended to substitute Vigilant for MCA in the original agreement. Furthermore, the language in the General Indemnification Agreement, which Burnell signed in both his personal and corporate capacities, provided for the indemnification as "Surety" of both MCA and "any person or company joining with it in executing any Bond, [or] executing any Bond at its request...." In

this context, it is clear that WEB and Burnell did not expect to be bound only to MCA, or to have power to approve of or to reject other insurers brought in by MCA. A reasonable jury could conclude, in light of the language of the Indemnity Agreement, the original negotiation of the bonds (for which the Indemnification Agreement was an inducement), the letter of December 3, 1992, and the dealings between Burnell and Vigilant, that the intention of the parties was to cause a Novation of the General Indemnity Agreement and that they did not believe that formal and separate agreements from Burnell as president of WEB and from Burnell in his personal capacity were necessary.[1] The Novation Agreement is susceptible to the interpretation that Burnell's signature, lacking an indication of corporate capacity, was intended to bind both WEB and himself to the full substitution of Vigilant for MCA Insurance Company. *See, Maine Gas & Appliances, Inc. v. Siegel*, 438 A.2d 888 (Me. 1981) (holding that where vice-president of a corporation signed a promissory note under the typewritten name of the corporation, next to the word "by" without designating corporate capacity, personal liability was not precluded as a matter of law.)

There being a genuine issue of material fact as to the intent of the parties to bind Walter E. Burnell as an individual, Defendant Burnell's Motion for Summary Judgment will be, and it is hereby, *DENIED.*

---

**1.** Because the Court concludes that the Novation Agreement is ambiguous, it is not necessary for the Court to consider Plaintiff's suggestions that Defendant Burnell deliberately misled Vigilant or that Burnell had a duty to disclaim the novation because he was an intended beneficiary of the novation.